# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-0069-CV

### In the Matter of D. L. T.

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-23,454, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After D.L.T. was adjudicated delinquent by the Hays County Court at Law, his case was transferred[1] to the Travis County District Court,[2] which committed D.L.T. to the Texas Youth Commission ("TYC") for an indeterminate sentence after considering D.L.T.'s stipulation of evidence, a court summary from a juvenile probation officer, a Child Protective Services ("CPS") placement report, and witness testimony. In two points of error, D.L.T. contends that the court abused its discretion in conducting the disposition hearing without receiving evidence of the facts adduced at the adjudication hearing[3] and that there is insufficient evidence supporting the court's order committing him to TYC. We affirm the trial court's order.

---

[1] Section 51.07 of the family code authorizes a juvenile court to transfer a case for disposition from the county in which the offense occurred to the county of the child's residence. Tex. Fam. Code Ann. § 51.07 (West Supp. 2007).

[2] The Hays County Court at Law and the Travis County District Court sat as juvenile courts. The disposition hearing in Travis County was conducted by an associate judge who, along with Judge Meurer, signed D.L.T.'s Dispositional Order of Commitment to the Texas Youth Commission.

[3] A reporter's record of the adjudication hearing was not prepared or requested.

## BACKGROUND

D.L.T., who was a fourteen-year-old youth, presented the Hays County juvenile court with a signed stipulation of evidence stating that he had engaged in delinquent conduct by committing the offenses of theft and unauthorized use of a motor vehicle. *See* Tex. Penal Code Ann. § 31.03 (West Supp. 2007), § 31.07 (West 2003).[4] In the presence of his attorney and under oath, D.L.T. stipulated that in Hays County on or about December 4, 2005, he appropriated a pickup truck

---

[4] D.L.T.'s stipulation to the court, in relevant part, states:

After having been sworn, upon oath, said Child [D.L.T.] in the presence of the Child's attorney does hereby in open Court make the following judicial statement and confess to the following facts and agrees and stipulates that these facts are true and correct and constitute the evidence in this case.

I, [D.L.T.], was born on the [] day of [], 1991, and I further admit that:

**COUNT I.  THEFT > = $20,000 < $100,000**
On or about the 4th day of December A.D., 2005, in Hays County, Texas, [D.L.T.] did then and there appropriate property; to-wit:  a Ford pickup of a value of equal to $20,000.00 or more dollars, but less than $100,000.00 dollars; with the intent to deprive the owner, James T. Nelson, of said property;

Such conduct violates a penal law of the State of Texas punishable by imprisonment or confinement in jail, to-wit: Section 31.03 of the Texas Penal Code, and is delinquent conduct as defined in Section 51.03(a) of the Texas Family Code.

**COUNT II.  UNAUTHORIZED USE OF MOTOR VEHICLE**
On or about the 4th day of December A.D., 2005, in Hays County, Texas, [D.L.T.] did then and there intentionally or knowingly operate a motor-propelled vehicle, namely:  a 2006 Ford pick up, without the effective consent of James T. Nelson, the owner thereof;

Such conduct violates a penal law of the State of Texas punishable by imprisonment or confinement in jail, to-wit: Section 31.07 of the Texas Penal Code, and is delinquent conduct as defined in Section 51.03(a) of the Texas Family Code.

2

with intent to deprive the owner of it. D.L.T. further stipulated that he intentionally or knowingly operated that vehicle without the effective consent of the owner. The stipulation states that D.L.T. "confess[es]" to these facts and that they "are true and correct and constitute the evidence in the case." His notarized signature and that of his attorney appear near the bottom of the document.[5] Beneath those signatures is the court's approval of the stipulation.[6]

On December 19, 2005, pursuant to D.L.T.'s stipulation of the evidence, the court adjudicated D.L.T. delinquent for theft and unauthorized use of a motor vehicle. *See* Tex. Fam. Code Ann. § 54.03 (West Supp. 2007). The court subsequently signed an order transferring the disposition phase of the case to Travis County juvenile court in accordance with section 51.07 of the family code, which authorizes a juvenile court to transfer a case for disposition from the county in which the offense occurred to the county of the child's residence. *Id*. § 51.07 (West Supp. 2007).[7]

The Travis County juvenile court conducted D.L.T.'s disposition hearing on January 25, 2006. At the beginning of the hearing, the court noted that the offenses of theft and unauthorized use of a motor vehicle had been stipulated and adjudicated. In the stipulation, which is signed by D.L.T. and his attorney, D.L.T. "confesses" to the facts of the theft and unauthorized-use-of-motor-vehicle offenses for which he was adjudicated. He also agrees that the facts stated in his stipulation

---

[5] D.L.T. (and his attorney) also waived his rights to trial, confrontation of witnesses, and trial by jury.

[6] The last paragraph of the stipulation appears above the judge's signature and states, "The foregoing Stipulation of Evidence having been made and signed by the Child and the Attorney for the Child in open court is hereby considered approved and granted."

[7] A docket sheet notation indicates that the case was transferred from Hays County for disposition because Child Protective Services has joint managing conservatorship with D.L.T.'s mother in Travis County.

3

are true, correct, and constitute the evidence in the case. In rendering its disposition, the court stated that it would not consider D.L.T.'s felony-theft count, but only his adjudication for the state-jail felony of unauthorized use of a motor vehicle.

In addition to D.L.T.'s sworn stipulation, the court received facts concerning D.L.T.'s delinquent conduct from a court summary provided by D.L.T.'s juvenile probation officer and from a placement report provided by CPS. *See id.* § 54.04(b) (West Supp. 2007) (authorizing court to consider written reports from probation officers, professional court employees, or professional consultants during disposition hearing); *see also In re J.A.W.*, 976 S.W.2d 260, 264 (Tex. App.—San Antonio 1998, no pet.) (concluding that court could consider detention center reports that neither party offered into evidence during disposition hearing); *In re A.F.*, 895 S.W.2d 481, 485-86 (Tex. App.—Austin 1995, no writ) (holding that court could consider social history report during disposition hearing). The juvenile probation officer's court summary revealed that this was D.L.T.'s first adjudication; however, it was not the first time he had been charged with a crime: D.L.T. had an aggravated sexual assault of a child case that was dismissed pending further investigation, a pending charge against him for unauthorized use of a motor vehicle (unrelated to this case), and an active warrant for criminal mischief. The summary disclosed that D.L.T. spent two years at a residential treatment center and had been placed, unsuccessfully, in two different foster homes after his release from the treatment center. The summary also contained D.L.T.'s admission that he has friends who are gang members. The probation officer's summary concluded by recommending twelve-months' probation, forty hours of community service, and counseling for D.L.T., but it noted that he was eligible for commitment to TYC.

4

The CPS report[8] provided to the court stated that on November 22, 2005—shortly before his adjudication—D.L.T. stole a car from his foster parents, abandoned it in a parking lot, and fled to his girlfriend's home. When a caseworker asked D.L.T. why he took the car, he replied that "his gang leader called him and asked for him to report to his location." When asked why he was at his girlfriend's house, D.L.T. responded that "his girlfriend might be pregnant and he went there to see how she was doing." D.L.T.'s foster parents informed CPS that they could not trust D.L.T. and requested his discharge from their home. CPS complied and placed D.L.T. in another foster home.

The next week, according to the CPS report, D.L.T. and another person stole a vehicle from the campus of Anderson High School and abandoned it on a train track, where it was later hit by an Amtrak train. Four days later, on December 1, 2005, campus-surveillance cameras at Anderson High School recorded D.L.T. and another person stealing a van. Afterward, D.L.T. picked up his girlfriend from her house and failed to return to his foster home that evening. The Austin Police Department and CPS were notified that D.L.T. was missing, and he was placed on runaway status. CPS later learned of allegations that on December 1 or 2, D.L.T. broke into the home of his former foster parents and stole money and electronics from them.

The report also disclosed that on December 4, 2005, D.L.T. and his girlfriend were arrested and detained in the Hays County Juvenile Detention Center after being stopped by police in Dripping Springs for reckless driving in a stolen vehicle. CPS informed the police that D.L.T. had

---

[8] The second page of the ten-page report from CPS (page 107 of the clerk's record) is missing and has not been located by the Travis County Clerk's Office. However, the information in the remainder of the report is sufficient to support the court's ruling.

warrants in Travis County for theft and criminal trespass at Anderson High School. The police told CPS that they would call Travis County to determine whether D.L.T. should remain in Hays County or be transferred to Travis County. CPS also spoke with D.L.T.'s juvenile probation officer in Hays County, who stated that "the recommendation for [D.L.T.] might be for him to go to TYC." CPS stated that it agreed with that recommendation.

The CPS report further revealed that D.L.T. was not progressing well in therapy and had problems in school, including failing certain classes, accumulating twenty-four tardies and four truancies, and participating in three fights.

D.L.T. did not offer any evidence at the adjudication hearing. Because neither party requested preparation of the reporter's record of the adjudication hearing, it was unavailable to the Travis County juvenile court. However, there was no objection to the court's proceeding with the disposition.

The court heard disposition recommendations from D.L.T.'s mother, a CPS caseworker Carlace Gilbert, and representatives from Court Appointed Special Advocates (CASA) Ferdinand Stehling, Juanita Stehling, and Lucia White. D.L.T.'s mother requested that her son be released from detention and given probation. Caseworker Gilbert testified that D.L.T. should be placed in a residential treatment center, noting D.L.T.'s unsuccessfulness with alternative placement: "when [D.L.T.] was in a therapeutic foster home, he broke it down doing all of his behaviors." Ferdinand Stehling opined that D.L.T. should have CPS supervision and be placed in a residential treatment center. Juanita Stehling suggested, "In a place where he gets much therapy." White added her recommendation that D.L.T. be removed from detention.

6

After hearing testimony and considering D.L.T.'s stipulation of evidence, the juvenile probation officer's court summary, and the CPS placement report, the court committed D.L.T. to the Texas Youth Commission for an indeterminate sentence. *See* Tex. Fam. Code Ann. § 54.04(d)(2) (West Supp. 2007). This appeal followed.

## DISCUSSION

### Standard of review

Juvenile courts possess broad discretion to determine the disposition of a child adjudicated delinquent. *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.); *In re J.R.*, 907 S.W.2d 107, 110 (Tex. App.—Austin 1995, no writ). Absent a showing of abuse of discretion, we will not disturb the findings of the juvenile court. *In re M.S.*, 940 S.W.2d 789, 791 (Tex. App.—Austin 1997, no writ). A court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

Findings of the juvenile court are reviewable for legal and factual sufficiency. *In re C.C.*, 13 S.W.3d 854, 857 (Tex. App.—Austin 2000, no pet.) (op. on reh'g). In reviewing for factual sufficiency, we consider and weigh all of the evidence, and if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, we set aside the disposition order and remand the case for a new disposition hearing. *Id.* In reviewing for legal sufficiency, we consider the evidence in the light most favorable to the finding and determine whether any rational trier of fact could have found that the elements of the requirement were proved beyond a reasonable doubt. *Id.*; *In re M.S.*, 940 S.W.2d at 791-92.

7

**Disposition without adjudication-hearing transcript**

In his first point of error, D.L.T. contends that the trial court abused its discretion in conducting the disposition hearing without receiving evidence of facts adduced at the adjudication hearing. He argues that at the disposition hearing, the court had the stipulation of evidence and the adjudication order but lacked a transcript of the adjudication hearing. D.L.T. failed to take any action preserving this complaint with the trial court. As a general rule, a complaint must be raised in the trial court as a prerequisite for appellate consideration. Tex. R. App. P. 33.1(a). Because D.L.T. did not object to conducting the disposition hearing without a transcript from the adjudication hearing (nor did he request preparation of the reporter's record), he waived this complaint. *See id*.; *see also In re V.J.*, No. 12-05-00324-CV, 2006 Tex. App. LEXIS 6063, at *3-4 (Tex. App.—Tyler 2006, no pet.) (mem. op.).

Even if D.L.T.'s complaint were preserved, nothing in the family code requires a juvenile court to order preparation of the reporter's record of the adjudication hearing and to consider that record in making its disposition. While subsection 54.04(b) of the family code contains a hearsay exception expanding the information that is available for the juvenile court's consideration, *see* Tex. Fam. Code Ann. § 54.04(b); *In re C.J.H.*, 79 S.W.3d 698, 705 (Tex. App.—Fort Worth 2002, no pet.), the code does not specify that the court must order a reporter's record sua sponte and consider that information, even if the court has been provided with a stipulation of evidence from the juvenile, a court summary from the juvenile's probation officer, and a placement report from CPS. We overrule D.L.T.'s first point of error.

**Sufficiency of evidence supporting order of commitment**

In his second point of error, D.L.T. contends that there is insufficient evidence supporting the court's order committing him to TYC. A court may commit a child to TYC without a determinate sentence if the court finds that there is a need for disposition and that the child engaged in delinquent conduct violating a penal law of the State of Texas of the grade of felony. *See* Tex. Fam. Code Ann. § 54.04(d)(2). The court must also find that: (1) it is in the child's best interest to be placed outside the home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home; and (3) the child cannot receive the quality of care and level of support and supervision at home that is necessary to meet the conditions of probation. *Id*. § 54.04(i)(1) (West Supp. 2007); *In re C.C.*, 13 S.W.3d at 857. D.L.T. was statutorily eligible for TYC because he was adjudged delinquent for the commission of a felony. He does not contend that the statutory requirements of subsection 54.04(i)(1) have not been met. The juvenile court's "Dispositional Order of Commitment to the Texas Youth Commission" contains each of the findings required by subsection 54.04(i)(1).

Moreover, the court had sufficient evidence to support the findings in its order of commitment. D.L.T. acknowledges that the court summary included his charges for aggravated sexual assault of a child (which was dismissed pending further investigation) and unauthorized use of a vehicle, and disclosed his active warrant for criminal mischief. But he argues that he should not be committed to TYC because he had no prior adjudications and his current offense was nonviolent and "fairly minor." However, the record reflects that D.L.T. stipulated to his unauthorized use of a motor vehicle in Hays County, a felony offense that made him eligible for commitment to TYC.

9

*See* Tex. Fam. Code Ann. § 54.04(d)(2); Tex. Penal Code Ann. § 31.07. The probation officer noted that D.L.T. was eligible for TYC commitment and a report from CPS showed that it agreed with the Hays County juvenile probation officer who stated that "the recommendation for [D.L.T.] might be for him to go to TYC."

The court had evidence supporting its finding that it was in D.L.T.'s best interest to be placed outside the home, that reasonable efforts were made to prevent or eliminate the need for D.L.T.'s removal from his foster home, and that D.L.T. was not being provided the quality of care and level of support and supervision in his home that he needed to otherwise meet the conditions of probation. D.L.T. had already spent two years at a residential treatment center. After his release, he was placed in foster homes twice, both times unsuccessfully. D.L.T. ran away from his foster parents, demonstrated a pattern of truancy and behavioral problems in school, and was not progressing well in therapy. Moreover, according to the CPS report, D.L.T. broke into the home of his former foster parents, stole their money and electronics, and took their car. There was no evidence that appellant's mother, another relative, or foster home could provide the quality of care and level of support and supervision that D.L.T. needed.

Based on these facts in the record, the court stated:

> I'm going to put [D.L.T.] in TYC. . . . [D.L.T.] needs counseling but [he] is breaking the law on a repeated basis and sabotaging every effort that CPS is setting up to help him. These last offenses, quite frankly, I don't see them as psychological offenses. They're just crimes. It's a series of crimes, apparently for the fun of it, with absolutely no thought to his responsibility for that at all. So I'm going to commit [D.L.T.] to TYC.

10

After considering and weighing all of the evidence in a neutral light, we conclude that the court's findings supporting the order of commitment to TYC are not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *See In re C.C.*, 13 S.W.3d at 857. Thus, the evidence is factually sufficient to support the court's findings. Additionally, after considering the evidence in the light most favorable to the findings, we conclude that any rational trier of fact could have found that the requirements of subsection 54.04(i)(1) supporting the order of commitment to TYC were proved beyond a reasonable doubt. *See In re M.S.*, 940 S.W.2d at 791-92; *In re J.D.*, 773 S.W.2d 604, 606 (Tex. App.—Texarkana 1989, writ dism'd w.o.j.) (holding that evidence in record of juvenile's background, behavioral problems, and lack of appropriate alternatives for rehabilitation were sufficient to support trial court's order of indefinite commitment to TYC). Accordingly, the evidence is legally sufficient to support the findings.

Because the trial court's findings are supported by the record, it did not abuse its discretion in committing D.L.T. to TYC. D.L.T.'s second point of error is overruled.

## CONCLUSION

Having overruled both of D.L.T.'s points of error, we affirm the trial court's order.

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 9, 2008

11