**In the Matter of T.E.G.**

**No. 11–05–00397–CV.**

Court of Appeals of Texas, Eastland.

March 22, 2007.

J.K.(Rusty) Wall, Midland, for appellant.

Al Schorre, District Attorney, Aaron M. Pier, Assistant Dist. Atty's Office, Midland, for appellee.

Panel consists of WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

This is an appeal from a judgment adjudicating a juvenile of delinquent conduct. TEX. FAM.CODE ANN. § 51.03 (Vernon Supp. 2006) defines delinquent conduct as "conduct, other than a traffic offense, that violates a penal law of this state or of the United States punishable by imprisonment or by confinement in jail." The jury found that T.E.G. engaged in delinquent conduct by causing bodily injury to Joe Limon on September 21, 2004, and by causing injury to a child, Bay Wilson, on September 1, 2005. TEX. PEN.CODE ANN. § 22.01 (Vernon Supp.2006). In a single point of error, appellant asserts that the State's evidence of its reasonable effort to prevent removal of appellant from his home was legally and factually insufficient and did not support the court's decision to commit appellant to the Texas Youth Commission (TYC). TEX. FAM.CODE ANN. § 54.04(i)(1)(B) (Vernon Supp.2006). We affirm.

### Standard of Review

■ The adjudication of a juvenile as a delinquent is based on the criminal burden of proof: beyond a reasonable doubt. TEX. FAM.CODE ANN. § 54.03(f) (Vernon Supp. 2006). Therefore, we apply the same standards of review to challenges of the sufficiency of the evidence in the adjudication of a juvenile as we do in criminal cases. In re L.F.L.T.B., 137 S.W.3d 856, 858 (Tex. App.-Eastland 2004, no pet.). The challenge in this appeal, however, is to the sufficiency of the evidence in the disposition phase of the juvenile proceeding.

■ In reviewing a disposition order in a juvenile case, the majority of courts have declined to apply the criminal legal and factual sufficiency standards of review. In re C.G., 162 S.W.3d 448, 452 (Tex.App.-Dallas 2005, no pet.) (applying the civil standards); In re H.R.C., 153 S.W.3d 266, 269 (Tex.App.-El Paso 2004, no pet.); In re J.D.P., 85 S.W.3d 420, 426 (Tex.App.-Fort Worth 2002, no pet.); In re T.K.E., 5 S.W.3d 782, 785 (Tex.App.-San Antonio 1999, no pet.); In re K.L.C., 972 S.W.2d 203, 206 (Tex.App.-Beaumont 1998, no pet.); but see In re C.C., 13 S.W.3d 854, 858 (Tex.App.-Austin 2000, no pet.) (applying the criminal standards of review to a disposition). We will follow the civil standards in reviewing the legal and factual sufficiency of the evidence supporting a

juvenile court's disposition decision. In Section 54.03(f), the legislature mandated that findings supporting an adjudication of delinquency must be beyond a reasonable doubt. In Section 54.04, the legislature did not require the findings for disposition of a juvenile to be supported by proof beyond a reasonable doubt. *See* TEX. FAM. CODE ANN. § 54.04 (Vernon Supp.2006).

A juvenile court has broad discretion in determining a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct. *In re C.G.*, 162 S.W.3d at 452; *In re T.A.F.*, 977 S.W.2d 386, 387 (Tex.App.-San Antonio 1998, no pet.); *In re A.S.*, 954 S.W.2d 855, 861 (Tex.App.-El Paso 1997, no pet.). Absent an abuse of discretion, the reviewing court will not disturb the juvenile court's determination. *In re C.G.*, 162 S.W.3d at 452; *In re T.A.F.*, 977 S.W.2d at 387. The test for abuse of discretion is whether the court acted arbitrarily or unreasonably-that is, without reference to guiding rules and principles. *In re T.A.F.*, 977 S.W.2d at 387; *In the Interest of S.B.C.*, 952 S.W.2d 15, 17 (Tex.App.-San Antonio 1997, no writ). Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *In re C.G.*, 162 S.W.3d at 452.

The guiding principles for committing a child to TYC are provided in the Texas Family Code. When a court places a child on probation outside the child's home or commits a child to TYC, the court must include in its order its determination that it is in the child's best interests to be placed outside the child's home; reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. Section 54.04(i). The trial court's order in this case included these three findings. Appellant argues that the State presented legally and factually insufficient evidence to demonstrate that the state made reasonable efforts to prevent or eliminate the need for appellant's removal from his home.

The supreme court in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005), reviewed how an appellate court should analyze a legal sufficiency challenge to a jury verdict. The supreme court stated that "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* at 827. Instead of the jury, the juvenile court was the trier of fact at the disposition hearing in this case. In our review for abuse of discretion, we apply the *City of Keller* requirements in our legal sufficiency analysis of the juvenile court's fact findings: we consider the evidence in the light most favorable to the findings and indulge every reasonable inference that supports them; we credit favorable evidence if a reasonable trier of fact could and disregard contrary evidence unless a reasonable trier of fact could not; we recognize that the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony; and we cannot substitute our judgment for that of the trier of fact so long as the evidence falls within the zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 821-28. Also, in reviewing for abuse of discretion with respect to the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside a juvenile court's determination only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176

(Tex.1986); *In re J.D.P.*, 85 S.W.3d at 426; *In re T.K.E.*, 5 S.W.3d at 785.

### Background and the Disposition Hearing Testimony

The jury found that T.E.G. engaged in delinquent conduct by causing bodily injury to Joe Limon on September 21, 2004, and by causing injury to a child, Bay Wilson, on September 1, 2005. T.E.G., a junior high school student, and Limon exchanged words just before class was dismissed. Limon admonished T.E.G. to be quiet in order to prevent them from being held in class after the bell. T.E.G. struck Limon's left cheek with his fist. Limon experienced pain, a swollen cheek, and a cracked tooth. Almost a year later, T.E.G. got off a school bus, approached a student, and accused that student of making a racial slur. T.E.G. pushed the student down and then was confronted by the student's nine-year-old brother, Wilson, who attempted to intervene on behalf of his brother. T.E.G. hit the younger boy with his fist so hard that Wilson's eye socket and concussion required hospital treatment and observation.

T.E.G.'s disposition hearing was approximately two weeks after he had been adjudicated of having engaged in delinquent conduct and having caused bodily injury. Lisa Trevino, a Midland County juvenile probation officer, introduced T.E.G.'s social history that was prepared after the Limon incident and a social history supplement that was prepared after the Wilson incident. Trevino admitted that, after the Limon incident, the Juvenile Probation Department had recommended probation in T.E.G.'s home for one year but that the department, after the Wilson incident, recommended commitment to TYC. Trevino introduced a school report showing that T.E.G. was failing all of his classes except English. The report also showed that T.E.G. had 35 disciplinary referrals at his school during the two-and-one-half-month period prior to his jury trial. In addition to the assault against Wilson, one of the disciplinary referrals involved T.E.G. being suspended for fighting with another student on October 19, 2005. Most of the referrals involved T.E.G. being disruptive and having a problem with authority. T.E.G. admitted to school authorities that he was under the influence of marihuana on November 3, 2005, and at that point, the authorities recommended that he be expelled.

Trevino testified that she met with T.E.G.'s mother who "admitted that [T.E.G.] tends to get angry and react before thinking about what he's going to do or not do." Trevino stated that the mother believed that T.E.G. was not open enough or willing for his mother to help him with problems at school or within the community. According to Trevino, the record showed an increase in T.E.G.'s misbehavior at school.

When asked if the department explored alternatives to recommending a commitment to TYC, Trevino gave an affirmative reply but stated a number of reasons why the department rejected those alternatives. She said that the department had referred youngsters for anger management counseling through the Top Rank Youth Program and also to MHMR for services relating to an ADHD or bipolar diagnosis. Trevino stated that the severity of T.E.G.'s discipline problems indicated that he would not respond well to the counseling through the Top Rank Youth Program and that he could also pose a danger to the community. According to Trevino, T.E.G. would not get sufficient counseling under the alternatives but would receive more services at TYC. Trevino expressed her belief that the commitment to TYC would be in T.E.G.'s best interest.

Counsel for T.E.G. points out that Trevino spent less than thirty minutes with T.E.G. before completing her portion of the social study. During cross-examination, Trevino stated that, when she served the summons on T.E.G. at school, she spent twenty minutes with him discussing an incident that he had been involved in at school earlier during the day. T.E.G. admitted to her that he had been under the influence of marihuana. They also discussed who T.E.G. was associating with, his drug use, and other information she needed for the supplement to his social history. The supplement reflects that T.E.G. admitted that he smoked marihuana a couple of times a month. Trevino spent another ten minutes with T.E.G. just after the jury verdict of delinquency was returned.

Trevino also testified that she met with T.E.G.'s mother on two occasions to discuss the family's history and other matters that Trevino needed for the supplemental report. Trevino explained that she presented the information required by the staffing committee but did not participate in their decision. The staffing committee was composed of all the supervisors within the department. Trevino testified that the staffing committee of the department made the recommendation for commitment to TYC based on the two assaults and the numerous disciplinary problems at school. After testifying about the various options for a child-probation, intensive supervision probation, secured detention facilities, a boys' ranch, and TYC–Trevino stated that the department believed that TYC was the proper choice because the minimum stay there was nine months, a length of time adequate for TYC to provide T.E.G. with the services he required. Trevino described the services at TYC:

They—they operate on what's called four cornerstones of resocialization. That centers around, of course, education, physical training, military movement drills, correctional therapy sessions, leadership and social skills training, work activities, facility maintenance, of course, any type of counseling for any special needs that he may have, whether it be for his ADHD or anger management or any other needs that he may have.

Trevino stated that T.E.G. needed services for his ADHD and intense substance abuse counseling in view of his use of drugs. She admitted that the department had programs to address those problems if he were put on probation and left in his home. Trevino stated that the staffing committee looks at all the options and then decides what is best for each child.

T.E.G.'s mother testified that her husband works and that she has a part-time student job while she is attending classes on computers at Midland College. She testified that T.E.G. had been a client of MHMR when he was six or seven (he was fifteen at the time of trial) to help him control his anger and to treat his ADHD. Several doctors treated T.E.G. until early in the year 2004. The medicine that he took calmed him down but did not help him focus on his school tasks. The mother conceded that T.E.G. continues to have behavioral problems and that, if those problems are not addressed, he could become involved with the criminal justice system when he becomes an adult. T.E.G.'s mother expressed her fears that TYC was "just prison for kids" and that he would not be helped. She expressed her preference that T.E.G. be left at home and be put on intensive probation. She assured the court that the family would make certain that T.E.G. made all required meetings.

### The Trial Court's Ruling

■ Prior to making its ruling, the trial court stated that T.E.G.'s mother, the

school district, and the Juvenile Probation Department had made reasonable efforts to prevent T.E.G. from being removed from his home. The court complimented the mother on her efforts to help T.E.G. However, the court believed that TYC would be the most effective way to help T.E.G. at this point in time. In addition to the evidence at the disposition hearing, the court had heard the evidence at the adjudication hearing concerning the severity of the assaults. We find that the evidence was legally and factually sufficient to support the trial court's finding that reasonable efforts were made to prevent or eliminate the need for the child's removal from the home. The trial court did not abuse its discretion in committing T.E.G. to TYC. Appellant's point of error is overruled.

## This Court's Ruling

The judgment of the trial court is affirmed.