Opinion filed August 29, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00287-CV

_____

## IN THE MATTER OF R.D.R. III, A JUVENILE

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. 6229**

### M E M O R A N D U M   O P I N I O N

A jury found that R.D.R. III, a juvenile, engaged in delinquent conduct when he committed the offense of cruelty to nonlivestock animals. *See* TEX. PENAL CODE ANN. § 42.092 (West 2011); TEX. FAM. CODE ANN. § 51.03 (West 2014). After a disposition hearing, the trial court committed R.D.R. to the Texas Juvenile Justice Department for an indeterminate period of time not to exceed the time that he reaches nineteen years of age. Appellant asserts four issues on appeal: two sufficiency issues, one jury instruction issue, and an evidence issue. We affirm.

## I. *Background*

*A. Evidence at Delinquency Trial*

In the petition for delinquency, the State alleged that, on or about April, 28, 2011, in Midland, Texas, Appellant unlawfully, intentionally, knowingly, and recklessly killed an emu without the effective consent of the owner, Dr. George Lohmann Jr., in violation of Section 42.092 of the Texas Penal Code. *See* PENAL § 42.092. The State alleged that Appellant killed the emu by hitting, striking, and bludgeoning it with rocks and bricks; by cutting, gouging, and stabbing it with a metal pipe; and by shooting it with a firearm. *See id.* On August 14, 2012, a jury trial commenced.

Dr. Lohmann testified that, on April 21, 2011, he found a dead emu on his property. Dr. Lohmann's emu had been badly beaten, had multiple gashes, and had been shot in the head and torso. Dr. Lohmann found a bloody cast iron triangle near the emu's body; he suspected that the triangle had been used to kill the emu.

On April 25, 2011, Dr. Lohmann found another one of his emus dead on his property. The emu's legs were "compound-fractured," its head had been smashed in, and it was bruised and featherless. Dr. Lohmann found a bloody wooden log beside the emu and assumed that the log had been used to kill the emu. On April 28, 2011, Dr. Lohmann found his last emu dead on his property. The emu had been speared repeatedly in the neck and torso with an aluminum pipe, and the pipe was still inside the emu. Dr. Lohmann also found a bungee cord near the emu.

J.D., a juvenile, testified that, at around the time that the emus were killed, he was good friends with Appellant. J.D. was at Appellant's house in May 2011

2

talking to a boy named B.M.[1] about "the emus" when Appellant entered the room and joined in the conversation. In response to the conversation about the emus, Appellant smirked and said, "Yeah, I did that" or "[W]e went and did that."

C.P., a friend of Appellant, and H.J., who dated Appellant for several months in 2011, both testified. C.P. testified that Appellant told him that Appellant had watched B.M. kill the emus. C.P. noted that Appellant never claimed that he actually killed the emus. In contrast, H.J. testified that she was at Appellant's house with Appellant and B.M. in the summer of 2011 when Appellant suggested that they look at the "Crime Stoppers" website. When they found a report of Dr. Lohmann's dead emus on the "Crime Stoppers" website, Appellant laughed and flippantly said that he had killed the emus.

Another witness, M.B., testified that Appellant told M.B. that he had killed several emus with B.M. and another boy. Appellant specifically stated that the three of them beat one of the emus with an aluminum pole and snapped the neck of one of the emus over a fence. Appellant thought the killings were funny and had no remorse about the killings. Appellant later told M.B. that they had used a bungee cord to tie up one of the emus.

The jury ultimately found beyond a reasonable doubt that, as charged in the State's petition, Appellant engaged in delinquent conduct when he committed the offense of cruelty to nonlivestock animals. After a recess of approximately one month, the case proceeded to a disposition hearing.

*B. Evidence at Disposition Hearing*

In addition to the jury's verdict, the trial court considered the testimony of a number of witnesses at Appellant's disposition hearing. William Sewell testified that Appellant was friends with his son and that he had allowed Appellant to move in with his family for a month or two in 2008. In June 2012, Sewell returned from

---

[1]J.D. explained that B.M. died later that year.

a trip and noticed that his daughter's four-wheeler was missing. Sewell suspected Appellant had taken the four-wheeler after people reported seeing Appellant riding a four-wheeler and after Sewell's daughter saw a picture of the four-wheeler on another girl's Facebook page with a caption stating that the four-wheeler had been a gift from Appellant.

Officer Thomas Hunnicutt of the Midland Police Department testified that he retrieved Sewell's four-wheeler from Appellant's house. When the police returned the four-wheeler to Sewell, it was "totally worthless"; the fenders had been removed; and the serial number had been ground down and obliterated. Appellant told Officer Hunnicutt that he had purchased the four-wheeler for $150 from a man in his twenties, named "Dan," at 1603 Sparks Drive. Appellant also gave Officer Hunnicutt a bill of sale signed by Appellant and a person named "Dan." Officer Hunnicutt believed that the bill of sale was fake because the signatures on the document were in the same handwriting. Officer Hunnicutt later contacted the homeowner at 1603 Sparks Drive and found him to be a fifty-seven-year-old man named "Wayne Helms." Helms told Officer Hunnicutt that he never gave anyone permission to sell a four-wheeler on his property.

Officer Doug Crisp with the Midland Police Department testified that he responded to a burglary report at Cedo's Convenience Store on June 28, 2011. B.H. testified that, on June 28, 2011, he, Appellant, and some friends broke into Cedo's Convenience Store in Midland. B.H. said that they had been drinking beer at Appellant's house before the burglary and that one boy broke a window to gain access to the store. Once they were inside the store, they stole candy, cigarettes, and beer. When Officer Crisp later asked Appellant about his involvement in the burglary, Appellant said, "I was there." Based on Appellant's admission, Officer Crisp charged him as a party to the offense of burglary of a building.

4

L.K., Appellant's half sister, testified that she and Appellant had a chaotic home life in 2011 because of their alcoholic stepfather, who was deceased at the time of trial. L.K. said that Appellant's biological father was hateful to Appellant and wanted nothing to do with him and that that devastated Appellant. Appellant had been living with L.K. for the past two months, and he had not caused any trouble and had a great attitude. L.K. asked the court to place Appellant on probation, which she thought would prevent him from following others at the detention center and becoming a career criminal.

Appellant's aunt testified that Appellant's stepfather was a mean alcoholic and that, as a result, Appellant was angry and withdrawn. Appellant's aunt noted that Appellant was always respectful to her and that her two young children enjoyed playing with him. She thought Appellant was a kind and loving boy who needed a second chance.

E.B., Appellant's grandmother, testified that Appellant was helpful and kind in her presence. E.B. noted that Appellant's father was not a positive influence and was never there for him. E.B. said that Appellant's mother, sister, grandparents, and several friends would be his support system.

Jeff Levya, Appellant's probation officer, recommended that Appellant be placed on probation with the additional requirements that he attend a youth program and complete community service hours. Levya also recommended that Appellant attend counseling based on the fact that cruelty to animals is a "red flag" offense that "can lead to trouble into adulthood."

At the conclusion of the hearing, the trial court found that Appellant was in need of rehabilitation and that the public needed protection. The trial court committed Appellant to the Texas Juvenile Justice Department for an indeterminate period of time or until he reached the age of nineteen. The trial court found that the disposition was in Appellant's best interest and that

Appellant's home could not provide him with the quality of care and level of support and supervision that he needed to meet the conditions of probation.

## II. *Issues Presented*

Appellant presents four issues on appeal: (1) the evidence was insufficient to support the trial court's disposition findings; (2) the evidence was insufficient to support the jury's determination that he engaged in delinquent conduct; (3) the trial court erred when it submitted an instruction to the jury on the law of parties; and (4) the trial court erred when it admitted certain hearsay testimony of J.D.

## III. *Standard of Review*

The procedural and evidentiary rules that govern juvenile proceedings are outlined in Section 51.17 of the Juvenile Justice Code. *See* FAM. § 51.17. A juvenile court has broad discretion in determining a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct. *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.); *In re T.A.F.*, 977 S.W.2d 386, 387 (Tex. App.—San Antonio 1998, no pet.). Absent an abuse of discretion, we will not disturb the court's determination. A trial court abuses its discretion when it acts without reference to guiding rules and principles. *In re T.A.F.*, 977 S.W.2d at 387.

An appeal from an order of a juvenile court is to a court of appeals, and the requirements governing such an appeal are as in civil cases generally. FAM. § 56.01(b). On appeal, such proceedings are to be governed by the Texas Rules of Appellate Procedure as far as practicable. *In re D.I.B.*, 988 S.W.2d 753, 756 (Tex. 1999); *In re J.R.C.S.*, 393 S.W.3d 903, 913 (Tex. App.—El Paso 2012, no pet.). But juvenile delinquency proceedings also are quasi-criminal in nature. *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999).

The burden of proof for the adjudication of a juvenile as a delinquent is proof beyond a reasonable doubt. FAM. § 54.03(f). We apply the same standards

6

of review to a challenge of the sufficiency of the evidence in the adjudication of a juvenile as we do in criminal cases. *In re L.F.L.T.B.*, 137 S.W.3d 856, 858 (Tex. App.—Eastland 2004, no pet.). In accordance with *Jackson v. Virginia*, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 443 U.S. 307, 319 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

General rules requiring preservation of error in the trial court "cannot be applied across the board in juvenile proceedings." *In re L.D.C.*, 400 S.W.3d 572, 574 (Tex. 2013) (citing *In re C.O.S.*, 988 S.W.2d at 765); *see* FAM. § 51.17. In civil cases, we review a claim of jury charge error for "fundamental" error, which only occurs "in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *In re L.D.C.*, 400 S.W.3d at 574 (citing *In re C.O.S.*, 988 S.W.2d at 765). In contrast, the standard of review in criminal cases for jury charge error is the two-step analysis found in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

In civil cases, fundamental error is reversible if it "probably caused the rendition of an improper judgment [or] probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a); *In re L.D.C.*, 400 S.W.3d at 574. In criminal cases, we first decide if there is an error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Second, if an error exists, we confirm whether the defendant preserved the error. *Id.* If properly preserved, we reverse if the error caused "some harm" to the defendant. *Id.* If not preserved, we are only required to reverse if the error was

7

"fundamental," meaning that it was so egregious and created such harm that it denied the defendant a fair and impartial trial. *Id.*

IV. <em>Analysis</em>

We will first address Appellant's sufficiency issue with respect to adjudication, followed by the claims of jury charge error and error in the admission of hearsay testimony, and finally Appellant's challenge to the trial court's disposition findings and order.

*A. Delinquency Finding*

A person commits the offense of cruelty to nonlivestock animals if he intentionally, knowingly, or recklessly kills or causes serious bodily injury to an animal without the owner's consent. PENAL § 42.092(b)(2). In this case, the trial court's charge to the jury included an instruction on the law of parties. Thus, the jury was permitted to find that Appellant committed the offense by his own conduct or the conduct of another under the law of parties. The jury was not required to specify the theory under which it made its decision. *See Stewart v. State*, 686 S.W.2d 118, 123–24 (Tex. Crim. App. 1984) (finding that a general verdict is required in every criminal case).

A person may be convicted as a party to the offense, under the law of parties, if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. PENAL § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). To determine whether a person acted as a party to an offense, the trier of fact may look to events occurring before, during, and after the offense. *Salinas v. State*, 163 S.W.3d 734, 739–40 (Tex. Crim. App. 2005). Participation in the offense may be inferred from circumstantial evidence and need

8

not be shown by direct evidence. *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987).

Dr. Lohmann found his three emus mutilated and dead. Dr. Lohmann found one of his emus with an aluminum pole sticking through it. M.B. said that Appellant specifically told him that he beat one of the emus with an aluminum pole. And some of Appellant's friends testified that Appellant bragged about having been involved in the emu killings. We conclude that the logical force of this evidence, when viewed in combination with the reasonable inferences from that evidence and in a light most favorable to the verdict, was sufficient for a rational jury to determine beyond a reasonable doubt that Appellant committed the offense of cruelty to nonlivestock animals directly or as a party to the offense. We overrule Appellant's second issue.

## B. Alleged Jury Charge Error on Law of Parties

The Juvenile Justice Code does not have a specific provision governing the jury charge. *See In re D.X.S.*, No. 13-12-00446-CV, 2013 WL 5522722 (Tex. App.—Corpus Christi Oct. 3, 2013, pet. denied) (mem. op.); *In re J.R.C.S.*, 393 S.W.3d at 913 (citing *In re A.A.B.*, 110 S.W.3d 553, 555–56 (Tex. App.—Waco 2003, no pet.)); *In re A.C.*, No. 11-09-00164-CV, 2011 WL 3925516 (Tex. App.—Eastland Sept. 8, 2011, pet. denied) (mem. op. on reh'g).

To preserve a complaint for appellate review, a party must have made a timely, specific objection in the trial court. TEX. R. APP. P. 33.1(a)(1). We note that preservation of jury charge error in adult criminal proceedings is usually governed by Article 36.19 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *see Saldano v. State*, 70 S.W.3d 873, 887–88 (Tex. Crim. App. 2002). Article 36.19 does not specifically apply to juvenile delinquency proceedings. *In re A.A.B.*, 110 S.W.3d at 556. However, the Texas Supreme Court has looked to *Marin v. State*, 851 S.W.2d 275 (Tex. Crim.

9

App. 1993), for guidance on when preservation is required under Rule 33.1(a)(1), a rule that applies to both civil and criminal proceedings. *In re C.O.S.*, 988 S.W.2d at 765–67. The Texas Supreme Court has concluded that it is "unwise and problematic to apply one preservation rule in adult, criminal proceedings and another, stricter rule in juvenile cases." *Id.* at 767; *see also In re D.I.B.*, 988 S.W.2d at 757.

Thus, some courts have used Article 36.19 and *Almanza* to determine whether jury charge error has been preserved in juvenile delinquency proceedings. *See In re B.S.A.*, No. 03-04-00319-CV, 2006 WL 954095, at *3 (Tex. App.—Austin Apr. 13, 2006, no pet.) (mem. op.); *In re C.M.*, No. 11-02-00150-CV, 2003 WL 1414436, at *2 (Tex. App.—Eastland Mar. 20, 2003, no pet.) (mem. op.); *In re K.W.G.*, 953 S.W.2d 483, 488 (Tex. App.—Texarkana 1997, pet. denied). *But see In re A.A.B.*, 110 S.W.3d at 555–59 (evaluating preservation of jury charge error under civil fundamental error analysis and disavowing *In re M.E.R.*, 995 S.W.2d 287, 291 (Tex. App.—Waco 1999, no pet.)). In addition, some courts have applied an *Almanza* harm analysis to juvenile delinquency proceedings in the absence of an issue as to preservation of error. *See In re A.E.B.*, 255 S.W.3d 338, 350 (Tex. App.—Dallas 2008, pet. dism'd); *In re C.S.*, 79 S.W.3d 619, 621–22 (Tex. App.—Texarkana 2002, no pet.); *In re E.F.*, 986 S.W.2d 806, 810 (Tex. App.—Austin 1999, pet. denied); *cf. In re M.P.*, 126 S.W.3d 228, 231–32 (Tex. App.—San Antonio 2003, no pet.) (noting courts of appeals differ on harm analysis of jury charge error in juvenile delinquency proceedings but no need to choose between criminal and civil harm analysis where result is same under both standards).

In light of the Texas Supreme Court's admonishment in *C.O.S.* and our sister courts' rulings, as well as our own, we will follow the criminal standard of review in addressing the alleged jury charge error in this case. *See In re D.X.S.*, 2013 WL 5522722, at *1 (citing *In re I.L.*, 389 S.W.3d 445, 451–52 (Tex. App.—El Paso

10

2012, no pet.)). For a jury charge error where no objection was made, we will reverse if the jury charge error caused egregious harm. *In re A.C.*, 2011 WL 3925516, at *6 (citing *Almanza*, 686 S.W.2d at 171). When we consider whether Appellant suffered egregious harm, we review (1) the entire jury charge; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.*

Appellant admits that a majority of the evidence indicated that he was directly responsible for the emu killings. We agree, and given that fact, any alleged error in the jury charge was harmless. *See Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986) ("Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless."). Appellant has failed to show that the claimed error caused him egregious harm. Likewise, if we should have applied the "fundamental" civil standard for a review of jury charge error where there was no objection, the result would be the same. Any jury charge error was not fundamental because it did not result in an improper judgment and did not prevent Appellant from properly presenting his case to the court of appeals. We overrule Appellant's third issue.

*C. Admission of J.D.'s Testimony*

A juvenile delinquency proceeding is governed by the Texas Rules of Evidence and by Chapter 38 of the Code of Criminal Procedure. FAM. § 51.17; *In re D.I.B.*, 988 S.W.2d at 756. However, on appeal, the civil rules of appellate procedure govern as far as practicable. FAM. § 56.01; *In re D.I.B.*, 988 S.W.2d at 756.

Our civil appellate rules generally require that a trial court's judgment cannot be reversed unless there is error that probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a); *In re D.I.B.*, 988 S.W.2d at 756.

11

Rule 44.1(a) permits reversal for error only if the error "(1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." TEX. R. APP. P. 44.1(a). An error in the admission of hearsay evidence that is reliable is harmless. *In re M.P.*, 220 S.W.3d 99, 111 (Tex. App.—Waco 2007, pet. denied).

In contrast, under TEX. R. APP. P. 44.2(b), the admission of inadmissible hearsay in a criminal case is generally a nonconstitutional error and, as such, must be disregarded if it does not affect a defendant's substantial rights: i.e., if, after examining the record as a whole, we are reasonably assured that the error did not influence the verdict or had but a slight effect. *Lacaze v. State*, 346 S.W.3d 113, 122 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). We again note the tension when we determine whether to apply the criminal or civil review standards, or both, to assess whether the improper admission of hearsay into evidence is reversible error; we note that the Texas Supreme Court has not resolved this issue. Because we think it more appropriate, we will apply the civil standard. *See In re D.I.B.*, 988 S.W.2d at 756.

Appellant specifically objected to J.D.'s being allowed to affirmatively answer the following question: "[D]o you, [J.D.], remember telling other people that [Appellant] told you he put the pole in the emu's head?" Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Here, even if we were to assume, without deciding, that the trial court erred in admitting the complained-of testimony, any such error did not result in an improper judgment because M.B. later gave similar testimony to which Appellant did not object. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008); *In re A.M.*, 418 S.W.3d 830, 840 (Tex. App.—Dallas 2013,

12

no pet.) (citing *Bay Area Healthcare Grp.*, *Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007)).

M.B. said that Appellant told him that Appellant had killed several emus. M.B. noted that Appellant said that he beat one of the emus with an aluminum pole. M.B.'s testimony parallels J.D.'s earlier statement that Appellant told J.D. that Appellant put a pole in one of the emus. Any error in the admission of J.D.'s testimony about what he said to others about Appellant's action was, in light of other testimony, cumulative and harmless. Likewise, if we were to apply Rule 44.2(b), the result would be the same. The admission of the evidence, even if erroneous, did not affect Appellant's substantial rights or influence the verdict but, at most, only had a slight effect. After examining the record as a whole, we are reasonably assured that any error in admitting the testimony of J.D. does not constitute reversible error. We overrule Appellant's fourth issue.

### D. Disposition Order

We now turn to Appellant's first issue. We follow the civil standards in reviewing a juvenile court's disposition decision. *In re T.E.G.*, 222 S.W.3d 677, 679 (Tex. App.—Eastland 2007, no pet.). A juvenile court has broad discretion in determining a suitable disposition for a child that has been adjudicated as having engaged in delinquent conduct. *Id.* at 678–79. Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *Id.*

Because we follow the civil standards when we review disposition, we consider both legal and factual sufficiency. In a legal sufficiency analysis, we consider the evidence in the light most favorable to the findings and indulge every reasonable inference that supports those findings. *Id.* at 679. We recognize that we cannot substitute our judgment for that of the trier of fact so long as the evidence falls within the zone of reasonable disagreement. *Id.* As to the factual

13

sufficiency of the evidence, we consider all of the evidence and set aside a court's disposition only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

When a court places a child on probation outside the child's home or commits a child to Texas Juvenile Justice Department, the court must include in its order its determination that (1) it is in the child's best interests to be placed outside the child's home; (2) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and (3) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation. FAM. § 54.04(i). We note that the trial court's order included these findings.

Appellant's disposition hearing was held approximately one month after a jury found that he engaged in delinquent conduct. Evidence adduced at the disposition hearing showed that Appellant had committed at least two property crimes. He had committed the offense of theft from someone who had previously shown him kindness. He had also burglarized a convenience store. Although several witnesses testified that Appellant's behavior had improved, the trial court, as the trier of fact, was permitted to determine that this testimony was insufficient to overcome Appellant's earlier actions. *See In re T.E.G.*, 222 S.W.3d at 679 (stating that "the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony").

Although Appellant's probation officer recommended that Appellant be placed on probation, the trial court was not required to follow that recommendation. *See* FAM. § 54.04(b) (stating that the trial court "may consider" written reports from probation officers); *In re C.M.G.*, No. 04-99-00044-CV, 1999 WL 1125423, at *2 (Tex. App.—San Antonio Dec. 8, 1999, no pet.) (not

designated for publication) ("The trial court is not bound to follow the recommendations of the probation officer."). In spite of his recommendation, Appellant's probation officer recognized that Appellant's actions regarding the killing of the emus was a "red flag" that suggested that Appellant should undergo counseling.

Taking into consideration all of the evidence, we find that the trial court did not abuse its discretion when it decided to remove Appellant from his home and place him in the custody of the Texas Juvenile Justice Department. Appellant clearly did not respect other people's property, had violent tendencies, and had not been properly supervised while at home. The disposition made by the trial court in this case fell within the zone of reasonable disagreement and was supported by legally and factually sufficient evidence. Accordingly, we overrule Appellant's first issue.

## V. *This Court's Ruling*

We affirm the order of the trial court.


MIKE WILLSON
JUSTICE


August 29, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.