**Opinion filed March 20, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00071-CV

_____

## IN THE MATTER OF J.F.E., A JUVENILE

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. 6482**

## M E M O R A N D U M   O P I N I O N

Appellant, J.F.E., appeals from an order of the county court at law sitting as a juvenile court. The court modified a prior disposition, revoked Appellant's probation, and ordered him committed to the Texas Juvenile Justice Department (TJJD) for an indeterminate period of time but not beyond his nineteenth birthday. Appellant asserts that there was legally and factually insufficient evidence to support the findings with respect to his commitment to TJJD; he also claims that his right to confrontation, under both federal and state constitutions, was violated by the juvenile court, when it admitted hearsay evidence. We affirm.

# I. *Procedural History*

Appellant originally stipulated and admitted that he had committed each of the six counts of a six-count Petition for Delinquency.[1] The juvenile court adjudicated Appellant delinquent and in need of rehabilitation, placed him on probation for one year, and released him to live with his aunt in Las Vegas, Nevada. Appellant went to live with his aunt in Las Vegas; however, he would not follow her rules and the court's orders, so she returned him to Midland.

Upon Appellant's return, the State moved to modify his disposition and alleged that he had violated his probation when he (1) engaged in disorderly conduct at the Las Vegas McCarran International Airport, (2) violated his curfew on four occasions while living with his aunt in Las Vegas, (3) engaged in a fight with another student at Midland High School prior to his departure to Las Vegas, and (4) violated school policy at Western High School in Las Vegas. Appellant pleaded not true to the allegations, and the juvenile court held modification and disposition hearings.

# II. *Evidence at Modification and Disposition Proceedings*

The State called four witnesses in the modification hearing: Appellant's aunt, Officer Mike Giblin, Tom Heiting, and Sherri Schrieber. Mike Giblin is a police officer with the Las Vegas Metropolitan Police Department. Schrieber is an assistant principal at Western High School, while Heiting is an assistant principal at Midland High School. The State called three witnesses during the disposition hearing: Jeff Leyva, Appellant's grandmother, and Appellant's father. Leyva was Appellant's probation officer. Appellant testified in his own defense.

---

[1]Appellant admitted that he had assaulted his father and another family member and that he also had threatened his father with imminent bodily harm with a deadly weapon, a machete. Appellant also admitted to two counts of resisting arrest and one count of evading arrest or detention.

*A.  Modification Proceeding*

Appellant's aunt testified that Appellant arrived in January 2014 and was supposed to live with her but that, because her sister had cable, internet, and phone service, Appellant stayed with his aunt's sister.  Appellant's aunt and his aunt's sister paid for Appellant's food and other things that he needed, and they asked him to follow three rules: (1) go to school, (2) take out the trash, and (3) be home by curfew.  Appellant's aunt testified that he was absent from school one day and tardy on two days.  She said he was supposed to be in the house by 10:00 p.m. but came home late, past curfew, on February 1, 2014.  She also said that he did not always take out the trash.

Appellant's aunt described Appellant's attitude as nonchalant and said that "he does not care about anything."  She told him that, if he ignored the rules, she would send him back to Midland.  Because of Appellant's attitude and his refusal to follow the rules, his aunt took him to the airport in Las Vegas to send him back to Midland, but he caused a disturbance in the airport parking garage when he learned he was going back to Midland.  She had to call the police.

Officer Giblin testified that he and another officer were dispatched to the McCarran airport parking garage about a disturbance there.  Once they arrived, Officer Giblin spoke to Appellant's aunt and her sister about Appellant's behavior in the parking garage.  Officer Giblin then arrested Appellant for disorderly conduct because Appellant used profane and vulgar language in a public place and his utterances tended to incite an immediate breach of the peace.  Officer Giblin indicated that Nevada law allowed him to arrest a juvenile for a misdemeanor offense of disorderly conduct.

Heiting and Schrieber also testified at the modification hearing.  Heiting testified that Appellant had engaged in a fight with another student and was suspended for three days in January 2014.  Schreiber testified that Appellant had

3

attended Western High School for less than two months and that, on two occasions, he was insubordinate and showed a lack of respect to others, which were violations of the school's rules. Schreiber admitted that the two violations were not committed in her presence.

### B. *Disposition Proceeding*

Leyva testified that he initially recommended Appellant complete probation while he lived with his aunt; however, that did not work, and he recommended that Appellant go to the TJJD. Leyva made this recommendation, based on the best interest of Appellant and to protect the public, because Appellant could not be controlled by his grandmother, father, or aunt and because no other family member could care for him.

Leyva also pointed out that Appellant had had seven detentions at the Barbara Culver Juvenile Justice Center (Culver) in Midland since July 2013 when he returned from his grandmother's care in Houston. The social history noted he had trouble in both Midland and Las Vegas. Leyva recommended commitment because, if Appellant failed to follow the rules there, he would already be in State custody; whereas, if Appellant were placed in the G4S program in Brownfield and did not follow the rules of that program, he would have to be retrieved from Brownfield and there would be no home to return him to and no place to take him.

Appellant's father testified that he and Appellant's grandmother had primarily raised Appellant. Appellant's grandmother and father also testified that they could not control Appellant. The father did not know of any family member that could control Appellant. Appellant's grandmother testified that Appellant would not follow her rules, would become angry when he could not go to a friend's house or stay out after curfew, and had damaged her home. Appellant's father acknowledged that he and his son had fought and that he struck his son and knocked out his son's front tooth. Appellant's father also indicated that he tried to

4

talk to his son and get him to follow rules, but Appellant would respond that he would not follow the rules.

Appellant's grandmother further testified that she had taken Appellant to three health care facilities and had learned that Appellant suffered from opposition defiant disorder. She said the disorder was directed toward her and Appellant's father and that Appellant acted differently around others; she indicated that she did not want Appellant to live with her or his father. However, she also indicated that, if Appellant made a "complete change," then he would be welcomed back in her home. Appellant's father also testified that, if Appellant followed his father's rules and completed the G4S program, he would be welcomed back in his home.

Appellant testified on his own behalf. Appellant said that he did not know what should happen to him but that he did not want to go to the TJJD. Appellant thought that his problems began in seventh and eighth grade when he got "whippings" for "little things" or for "stuff that didn't matter." Appellant recounted that he and his father argued and that Appellant has been defensive since his teeth got knocked out.

Appellant said that he had Attention Deficient Hyperactivity Disorder (ADHD) and had taken anti-depressants and other medication but that those medications had not helped him. Appellant admitted that he had used alcohol and marihuana and had gotten into trouble at school. Appellant conceded that he got into a fight at school less than two weeks after being put on probation and got into trouble on the first day of school in Las Vegas. Appellant said that he knew he would have to follow rules and that he wanted to go home.

### C. Rulings of Juvenile Court

The juvenile court found by a preponderance of the evidence that Appellant had violated the court's order when he (1) intentionally used abusive, indecent, profane, and vulgar language at the McCarran airport parking garage on

5

February 4, 2014—language which, by its very utterance, tended to incite an immediate breach of the peace; (2) stayed out past curfew on February 1, 2014; and (3) violated a school rule at Midland High School and was suspended for fighting on January 15 and 16, 2014. The juvenile court found that commitment of Appellant to the TJJD was in Appellant's and the community's best interest because Appellant was delinquent and in need of rehabilitation and because the various homes he had lived in were not providing for his needs.

### III. *Issues Presented*

Appellant presents two issues on appeal. First, Appellant asserts the evidence was legally and factually insufficient to support the trial court's findings regarding commitment. Appellant's second issue is that the juvenile court violated his right to confrontation, under both the Texas and United States Constitutions, when it admitted hearsay evidence.

### IV. *Analysis*

Modification of a juvenile disposition by the juvenile court is governed by the standards in Section 54.05 of the Texas Family Code. TEX. FAM. CODE ANN. § 54.05 (West 2014); *In re J.P.*, 136 S.W.3d 629, 631 (Tex. 2004). The juvenile court may modify its original disposition for a juvenile who committed a felony and was adjudicated delinquent. FAM. § 54.05(f). The juvenile court may modify the juvenile's probation and commit the juvenile to the TJJD if the juvenile court finds by a preponderance of the evidence that the juvenile violated a reasonable and lawful order of the court. *Id.* A juvenile court that commits a child to TJJD is required to include in its order a determination that (1) it is in the juvenile's best interest to be placed outside the home; (2) reasonable efforts were made to prevent or eliminate the need for the juvenile's removal from the home and to make it possible for the juvenile to return home; and (3) in his home, the juvenile cannot be provided the quality of care and the level of support and supervision that he needs

to meet the conditions of probation. *Id.* § 54.05(m). Appellant does not challenge the trial court's findings that he violated a reasonable and lawful order of the court, but he instead challenges the legal and factual sufficiency of the evidence to support the trial court's findings made pursuant to Section 54.05(m).

## A. Issue One: Legal and Factual Sufficiency

We review a court's decision to modify a juvenile disposition under an abuse of discretion standard. *In re J.P.*, 136 S.W.3d at 632–33. The trial court has broad discretion to determine a suitable disposition for a child adjudicated delinquent, and we will not disturb the determination of the trial court absent an abuse of discretion. *In re T.E.G.*, 222 S.W.3d 677, 678 (Tex. App.—Eastland 2007, no pet.). Under an abuse of discretion standard, legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion. *Id.* at 679.

The juvenile court's findings made pursuant to Section 54.05(m) may be reviewed for legal and factual sufficiency of the evidence using the same standards applied to review the legal and factual sufficiency of the evidence supporting a jury's findings in a civil case. *See In re A.G.*, 292 S.W.3d 755, 761 (Tex. App.—Eastland 2009, no pet.); *In re J.M.L.*, 243 S.W.3d 727, 729 (Tex. App.—El Paso 2007, no pet.). When a juvenile challenges the legal sufficiency of the evidence, we apply the four *City of Keller* requirements. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–28 (Tex. 2005). First, we consider the evidence in the light most favorable to the findings and indulge every reasonable inference that supports them. *Id.* Second, we credit favorable evidence if a reasonable trier of fact could and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* Third, we recognize the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* Finally, we cannot substitute our judgment for that of the trier of fact so long as the evidence falls within the zone of

7

reasonable disagreement. *Id.* When we review the factual sufficiency of the evidence, we consider and weigh all the evidence and set aside a juvenile court's determination only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In re T.E.G.*, 222 S.W.3d at 679–80 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *In re J.D.P.*, 85 S.W.3d 420, 426 (Tex. App.—Fort Worth 2002, no pet.); *In re T.K.E.*, 5 S.W.3d 782, 785 (Tex. App.—San Antonio 1999, no pet.)).

Appellant argues that the evidence was insufficient to support the findings made by the trial court pursuant to Section 54.05(m): that removal was in Appellant's best interest; that reasonable efforts had been made to eliminate the need for removal; and that, in his home, Appellant could not be provided with the quality of care and level of support needed to meet the conditions of probation. One issue that occupied the court's attention and that was the subject of testimony of several witnesses was Appellant's inability to control his behavior and follow rules. Appellant's aunt testified that Appellant was absent from school one day and tardy on two days. She testified that Appellant would not follow rules and had missed curfew. Appellant's grandmother also testified that he would not follow her rules. Appellant's grandmother indicated that Appellant had damaged her house when he did not get his way and that he was angry and defiant toward her and Appellant's father. Heiting recounted that Appellant had exhibited such behavior in school when he engaged in a fight with another student and was suspended for three days.

Appellant's grandmother testified that she had tried to help Appellant and had taken him to three health care facilities where she learned that he suffered from opposition defiant disorder. Appellant said that he had ADHD and had taken medication for the disorder but that the medication did not help him. Appellant's aunt, grandmother, and father all testified that they could not control Appellant;

8

furthermore, Appellant's father did not know of any family member that could control Appellant.

Appellant used profane and vulgar language in a public place, and his utterances tended to incite an immediate breach of the peace. Appellant admitted he had used alcohol and marihuana and gotten into trouble at school. Appellant also conceded that he got into a fight at school less than two weeks after being put on probation. Leyva pointed out that Appellant had had seven detentions at Culver since July 2013 when he returned from his grandmother's care in Houston.

Leyva said that, if Appellant failed to follow the rules at the TJJD facility, then nothing else need be done because he would already be in the custody of the State. Leyva recommended commitment, based on the best interest of Appellant and to protect the public, because Appellant could not be controlled by his grandmother, father, or aunt and because no other family member could care for him.

Nothing in the record indicates that Appellant's mother, or anyone else, was able to care for him. When asked by the court what Appellant wanted to do, Appellant was noncommittal, other than stating that he wanted to go home. Appellant did not testify that he wanted to go to the G4S program. Having reviewed the record, we hold that the trial court's findings under Section 54.05(m) were supported by legally and factually sufficient evidence and that the trial court did not abuse its discretion by ordering that Appellant be committed to the care and custody of TJJD. We overrule Appellant's first issue.

*B. Issue Two: Alleged Violation of Right to Confrontation*

Appellant claims the juvenile court violated his right to confrontation, under both the state and federal constitutions, when the juvenile court admitted the report of Dr. Charles Silverman, which was part of a social study report on Appellant commissioned by the Midland County Juvenile Probation Department. The Sixth

Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The Fourteenth Amendment of the Constitution makes the Confrontation Clause applicable to the states. *Pointer v. Texas*, 380 U.S. 400, 401 (1965). Article I, Section 10 of the Texas Constitution and Article 1.05 of the Texas Code of Criminal Procedure also guarantee the accused the right to confront witnesses in all criminal prosecutions. TEX. CONST. art. I, § 10; TEX. CODE. CRIM. PROC. ANN. art. 1.05 (West 2005).

But in this case, Appellant had already been adjudicated on the underlying offenses to which he had stipulated. The State's motion to modify disposition alleged he had violated the terms and conditions that were part of his probation for those underlying offenses. And, just as a revocation of criminal community supervision is not a criminal prosecution within the meaning of the Sixth Amendment, modification of a juvenile's probation also is not a criminal prosecution within the meaning of the Sixth Amendment. *See In re A.M.B.*, 676 S.W.2d 448, 450–51 (Tex. App.—Houston [1st Dist.] 1984, no pet.) (proceeding to modify juvenile probation is not a "trial" under Sixth Amendment); *see also In re E.B.*, 525 S.W.2d 543 (Tex. Civ. App.—Amarillo 1975, writ ref'd n.r.e.) (not a violation of due process or equal protection to deny jury trial in modification of disposition hearing). *Compare* FAM. § 54.03(b), (e) (juvenile is entitled to a jury trial, counsel, confrontation of witnesses, and right against self-incrimination in an adjudicatory proceeding to determine if juvenile is delinquent of a felony or misdemeanor) *with* FAM. § 54.05(c) (juvenile has no right to jury in a modification hearing). We hold that Appellant had no Sixth Amendment right to confront witnesses in the modification proceeding.

But even if we are incorrect and Appellant has a right to confrontation, which we do not hold,[2] then any error in the admission of Dr. Silverman's report[3] is reviewed under the civil harm analysis in TEX. R. APP. P. 44.1(a). *See In re C.P.*, 925 S.W.2d 151, 152 (Tex. App.—Austin 1996, writ denied); *see also In re T.E.G.*, 222 S.W.3d at 678; *G.A.O. v. State*, 854 S.W.2d 710, 716, 718 (Tex. App.—San Antonio 1993, no writ). The civil harm analysis applies to original and modified dispositions involving indeterminate sentencing. *In re D.V.*, 955 S.W.2d 379, 380 (Tex. App.—San Antonio 1997, no pet.).

Rule 44.1(a) provides that error is only reversible if the error (1) probably caused the rendition of an improper judgment or (2) probably prevented the appellant from properly presenting the case to the court of appeals. TEX. R. APP. P. 44.1(a). Dr. Silverman conducted a psychological evaluation of Appellant, and his report included relevant history, findings, and recommendations. In Appellant's case, not only did his grandmother testify about his mental health conditions, Appellant testified to them as well. Even if we assume without deciding that it was error to admit Dr. Silverman's report, there can be no harm where similar evidence was presented by other witnesses, including Appellant, without objection. We overrule Appellant's final issue.

V. *This Court's Ruling*

We affirm the order of the juvenile court.

March 20, 2015                                                MIKE WILLSON

Panel consists of: Wright, C.J.,                             JUSTICE
Willson, J., and Bailey, J.

---

[2]*See In re M.P.*, 220 S.W.3d 99, 111 (Tex. App.—Waco 2007, pet. denied).

[3]Section 54.04(b) provides that written reports from probation officers, professional court employees, or professional consultants may be considered by the juvenile court. FAM. § 54.04(b); *see also In re A.F.*, 895 S.W.2d 481, 483 (Tex. App.—Austin 1995, no writ).