162 S.W.3d 448 (2005)
In the Matter of C.G.
No. 05-04-00541-CV.
Court of Appeals of Texas, Dallas.
May 13, 2005.
*449 Dean M. Swanda, Arlington, TX, for Appellant.
Lori L. Ordiway, Assistant District Attorney for Dallas County, Chief of the Appellate Division, Dallas, TX, for Appellee.
Cheryl D. Holder, Asst. Dist. Atty., Dallas, for state.
Before Justices WRIGHT, FITZGERALD, and LANG-MIERS.

OPINION
Opinion by Justice FITZGERALD.
C.G., a juvenile, appeals the trial court's disposition of his adjudication as a juvenile *450 involved in delinquent conduct. That disposition resulted in C.G.'s assignment to the Texas Youth Commission ("TYC") rather than probation or assignment to less restrictive facilitiesand a restitution order in the amount of $600. C.G. identifies eight issues on appeal: each challenges the sufficiency of some evidence underlying this disposition. We affirm the trial court's disposition.

BACKGROUND
Appellant pleaded true to aggravated robbery in the adjudication portion of this proceeding. He was sixteen years old at the time of the hearing. The trial court accepted his plea and found appellant to be a child engaged in delinquent conduct and subject to a determinate sentence. The parties put on evidence concerning the appropriate disposition.

The State's Evidence
The State initially offered exhibits, including predisposition reports, appellant's psychological assessment, and a victim service addendum. This evidence was admitted without objection.
Thomas King, appellant's probation officer, testified for the State. He testified that the juvenile department recommended appellant be committed to the care, custody, and control of the TYC. King cited the aggravated nature of the offense as one reason for the recommendation. He also cited appellant's use of a handgun, his involvement with "negative peers," his "minimal" involvement with marijuana,[1] his poor academic record, and his violation of the school dress code. King testified that appellant admitted carrying a weapon and threatening another person before the incident made the basis of this charge. King stated appellant had a history of fighting and reported that appellant's father had been "referred to the criminal justice system as well." He testified that restitution was indicated to the victim in the amount of $600. He stated that he believed this recommendation was in the public's interest and appellant's best interest at this time.
On cross examination, King testified that appellant had only begun associating with these "negative peers" recently, that all his drug tests had been negative since his arrest, and that his father's referral to the criminal justice system had taken place in 1983. King testified he was recommending rehabilitation, specifically work on positive decision-making skills and individual counseling. He admitted that both of these services could be performed while appellant was on probation. They could also be performed in less restrictive placements. Appellant had been accepted at two such placements, and King said he did not know of any needs of appellant that could not be met in those placements or at home.

Appellant's Evidence
Appellant's father ("Father") testified that appellant shares his ministry to feed and share faith with the homeless; that shared ministry will continue if appellant received probation. Father further testified his son had been employed for two to three months at the time of the hearing. Father promised that if appellant were given probation, his parents would supervise him closely. If he could not return home, then Father sought other, less restrictive placement for appellant. Father testified appellant had not been a discipline problem and admitted thatbecause appellant had not been a difficult child Father may have "let loose the reigns [sic] a little bit too much." On cross-examination, *451 tion, Father testified he had given appellant permission to go to the mall and to a friend's house the night the robbery took place. He knew the robbery took place at eleven o'clock at night; he did not know the accomplice. Nor did Father know how his son could have gotten a gun, but he had heard of guns in the school, so he thought perhaps the gun had come from the same people supplying those other guns.
Appellant's mother ("Mother") also testified on her son's behalf. Mother agreed with her husband's testimony. She asked the court to give appellant probation and stated she and Father could supervise appellant at home. She also testified appellant had not been a problem for her.
Appellant's high school soccer coach testified that appellant was in his class. Appellant was not truant; he was well-behaved. The coach said he wanted to help keep appellant "out of the system"; he believed appellant was a good kid who had just slid off the right path.
Finally, appellant testified. He stated that he had learned his lesson after a month in confinement. He identified the individual who gave him the gun. He testified he now understands the consequences of his actions. Appellant said he participated in the robbery because he "thought it would just be easy." He said he did think about the victim inside the store: he emptied the gun before he went in so no one could be hurt. He apologized to the victim, who was in the courtroom. Appellant testified he hopes to graduate, take classes at a community college, and work in his father's ministry to help other kids not make the same mistake he made. He promised to abide by any terms and conditions that would be attached to probation. He asked, if he could not receive probation, for placement other than with TYC.
On cross-examination, appellant stated he did not know what he was going to do with the money from the robbery. He denied telling police he was going to use it to buy jerseys and shoes at the mall. He admitted the victim did not know the gun was unloaded. He opined that probation would be a punishment. He stated he had learned his lesson.
Appellant offered a series of exhibits, that included letters from his pastor and other adults who were members of his church and friends of his family. The exhibits also included a written daily plan, drawn up by Father, that provided for close supervision of appellant by his parents.

Disposition and Appeal
At the close of evidence, the trial court ordered appellant to be committed to TYC for eight years and to perform restitution to the robbery victim in the amount of $600. This appeal followed.

COMMITMENT OF JUVENILE TO TYC
If the trial court commits a child to the TYC, then its order must include three specific determinations:
(A) it is in the child's best interests to be placed outside the child's home;
(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and
(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.
TEX. FAM.CODE ANN. § 54.04(i)(1) (Vernon Supp.2004-05). The trial court's order in this case did include each of these three findings. However, appellant alleges, in *452 his first six issues, that the evidence is both legally and factually insufficient to support each of these three necessary findings by the trial court. A juvenile judge has broad discretion to determine the proper disposition of a child who has been adjudicated as engaging in delinquent behavior. In re K.J.N., 103 S.W.3d 465, 465-66 (Tex.App.-San Antonio 2003, no pet.); J.R.W. v. State, 879 S.W.2d 254, 257 (Tex.App.-Dallas 1994, no writ). Absent an abuse of discretion, we will not disturb the findings of the juvenile court. In the Matter of K.L.C., 972 S.W.2d 203, 206 (Tex.App.-Beaumont 1998, no pet.). Under an abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether the trial court abused its discretion. Doyle v. Doyle, 955 S.W.2d 478, 481 (Tex.App.-Austin 1997, no writ). In our legal sufficiency review, we consider only the evidence and inferences tending to support the findings, and we set aside the judgment only if there is no evidence of probative force to support the findings. In re J.D.P., 85 S.W.3d 420, 426 (Tex.App.-Fort Worth 2002, no pet.). In our factual sufficiency review, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. Id.

Best Interest of the Child to be Placed Outside Home
The trial court found that it would be in C.G.'s best interests to be placed outside his home. See TEX. FAM.CODE § 54.04(i)(1)(A). We look first to the evidence supporting that finding. The predisposition report identified appellant not just as a participant in an armed robbery, but as the actor who brandished the gun, pointed it at the complainant, and threatened the complainant in a continuing fashion. Appellant's probation officer recommended placement outside the home based in part on this aggravated nature of appellant's admitted offense. The officer also cited appellant's involvement with negative peers, his involvementalbeit "minimal"with marijuana, his poor academic record, and his violation of the school dress code. Significantly, the probation officer also testified to appellant's history of fighting and to at least one earlier incident that included carrying a weapon and threatening someone. All of these conditions arose while appellant lived at home, and Father and Mother were apparently unaware of most, if not all, of the problems. The trial judge heard the parents testify. She could well have concluded that the parentsdespite their good intentionsunderestimated appellant's problems. She could also have concluded that appellant's parents could not provide the highly structured and supervised setting C.G. required, according to both psychological assessment and probation officer. There was certainly some evidence of probative force to support a finding that appellant's best interest would be placement outside his home. See J.D.P., 85 S.W.3d at 426. Even when we view all the evidence offered on behalf of appellant, we cannot say that the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. See id.

Reasonable Efforts to Keep Child in Home and Allow His Return to Home
Appellant also challenges the trial court's finding that "reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home." See TEX. FAM.CODE § 54.04(i)(1)(B). Appellant's probation officer prepared the updated February 4, 2004 predisposition report that was admitted into evidence as State's Exhibit *453 1. That report stated, inter alia, that a pre-trial hearing had been held and that "[a]ll reasonable efforts were considered with the respondent." While those efforts are not catalogued in the report, we find no contrary evidence in the record. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's finding. See J.D.P., 85 S.W.3d at 426.

Inadequate Care, Support, and Supervision to Help Child Meet Conditions of Probation
Finally, appellant argues the evidence is insufficient to support the trial court's finding that "the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation." TEX. FAM.CODE § 54.04(i)(1)(C). We look again at all the evidence of the problems experienced by appellant while living at home, and we conclude there was some evidence to establish that his home circumstances were inadequate to help appellant meet the conditions of probation. See J.D.P., 85 S.W.3d at 426. Appellant's parents did testify to their willingness to create more structure for appellant's days and to monitor his conduct more closely. We have no basis for doubting the parents' sincerity concerning their desire to help their son. Appellant himself testified that he had learned his lesson and that he could live at home and comply with the conditions of probation. However, the trial judge was in the best position to determine appellant's sincerity and credibility and to determine whether he was likely to successfully follow through with the conditions of probation if he lived at home. When we look at all the evidence neutrally, we cannot say that it is factually insufficient to support the trial court's finding. See id.
We have concluded that adequate evidence supports each of the three required findings of the trial court. We decide appellant's first through sixth issues against him.

RESTITUTION
Appellant's final two issues challenge the legal and factual sufficiency of the evidence underlying the trial court's $600 restitution order. The initial police report of the incident, entered into evidence at the hearing, stated between $250 and 300 was taken in the robbery. A later Victim Service Report, also admitted into evidence, stated the complainant lost $600. Appellant argues there was no reason for court to have chosen $600 over the smaller amount. The State responds that the larger figure simply represents the complainant's re-calculation of his loss. The trial court could well have determined that the later-developed figure was based on reasoned calculation rather than a quick estimate immediately after the crime. The court's decision had at least as strong a basis in the evidence as the figure appellant prefers. We conclude the evidence is legally and factually sufficient to support the trial court's restitution order. See id. We overrule appellant's seventh and eighth issues.

CONCLUSION
We have decided each of appellant's issues against him. We find no abuse of discretion in the trial court's disposition. Accordingly, we affirm the judgment of the trial court.
NOTES
[1] There was evidence appellant had tried marijuana one time, well before his arrest.