NUMBER 13-06-00027-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN THE MATTER OF K.D.B., A JUVENILE

 


On appeal from the 130th District Court of Matagorda County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Benavides and Vela

Memorandum Opinion by Chief Justice Valdez


 

 K.D.B., appellant, appeals the trial court's disposition assigning him to the Texas
Youth Commission for a determinate period of sixteen years. In his sole point of error,
K.D.B. argues that the trial court abused its discretion by failing to make reasonable efforts
to return him to his home. See Tex. Fam. Code Ann. § 54.04(i)(1)(B) (Vernon 2002). We
affirm.

I. BACKGROUND

 K.D.B., a seventeen year old, pleaded true to six counts of aggravated robbery in
the adjudication portion of the underlying proceeding. The trial court accepted his plea and
found K.D.B. to be a child engaged in delinquent conduct and subject to a determinate
sentence. A hearing was held to determine the appropriate disposition. At the disposition hearing, the judge heard testimony from three victims of the
aggravated robberies. The State also called Christopher Duke, an employee for 
Matagorda County's juvenile probation department. Duke testified that after a detention
hearing, K.D.B. attempted to escape from the State's custody while being transported to
a juvenile detention center at Eagle Lake. On that occasion, K.D.B. ran from the car in
which he was being transported by Duke. After Duke jumped out of the vehicle to pursue
K.D.B., the juvenile ran back to the car, jumped into the driver's seat, and drove away. A
passing motorist picked up Duke, and the two pursued K.D.B. At times, the vehicles were
traveling more than 110 miles per hour. The pursuit ended when K.D.B. crashed into a
fence and was apprehended by Duke. 

 K.D.B.'s mother testified that she was willing and able to properly supervise K.D.B. 
She stated that K.D.B. lived with her prior to the aggravated robberies. During this time,
she witnessed mood swings from K.D.B. and believed that he was using drugs. She
testified that one night, K.D.B. broke out the window of his girlfriend's car. When K.D.B's
mother questioned him about it the next day, he admitted that he had tried "handlebars" (1)
and smoked marihuana prior to the incident. K.D.B.'s mother also testified that she knew
all but one of the peers who was allegedly involved in the aggravated robberies with K.D.B.

 When questioned about her criminal history, K.D.B.'s mother stated that she sold
drugs in the past and has been on felony probation since 1998. K.D.B.'s mother testified
that approximately one year after being placed on probation, she was sentenced to
confinement for one and one-half years. She stated that she has since reformed and is
able to offer suitable supervision for K.D.B.

 In addition to his mother's testimony, K.D.B. offered evidence that living with his
uncle was an alternative to being sent to the Texas Youth Commission. K.D.B.'s uncle
testified that he and his wife were willing to supervise K.D.B. and take him into their home. 
Although the uncle had not maintained a close relationship with K.D.B. prior to the
aggravated robberies, he testified that he has recently increased contact with his nephew. 
The uncle stated that he would provide supervision to K.D.B. by setting a curfew, not
allowing K.D.B. to hang out with his old friends, and screening new friends. The uncle also
stated that he would contact relatives to make sure someone was at his home in the
afternoons since K.D.B. would be home before the aunt and uncle returned from work.

 K.D.B. testified that the night of the robberies he pointed a gun at two people after
entering their hotel room while two of his friends searched the room for valuables. K.D.B.
stated that the gun was not loaded. During another robbery, K.D.B. admitted approaching
a group of people in a parking lot and taking a cell phone while one of his peers pointed
a gun at the victims. He stated that he felt "very bad" about the aggravated robberies and
he would apologize to the victim if he could. K.D.B. also stated that he was prepared to
find a job and a new group of friends. 

 At the close of the evidence, the trial court ordered K.D.B committed to the Texas
Youth Commission for a determinate period of sixteen years.

II. ANALYSIS

 A trial court is given broad power and discretion in the disposition of juveniles who
have been adjudicated delinquents. Matter of R.B., 697 S.W.2d 826, 828 (Tex.
App.-Corpus Christi 1985, no writ). The analysis for abuse of discretion has two prongs:
(1) whether the trial court had sufficient evidence with which to exercise its discretion; and
(2) whether the trial court erred in applying its discretion. In re J.M., 133 S.W.3d 721, 724
(Tex. App.-Corpus Christi 2003, no pet.). In evaluating whether the trial court abused its
discretion, we consider whether the trial court acted arbitrarily, unreasonably, or without
reference to guiding rules or principles. Id.

 A trial court must follow the guiding principles set out in section 54.04(i) of the Texas
Family Code when determining whether to commit a juvenile outside of his home. Tex.
Fam. Code Ann. § 54.04(i); In re K.J.N., 103 S.W.3d 465, 466 (Tex. App.-San Antonio
2003, no pet.). The Family Code permits a trial judge to commit a child to the Texas Youth
Commission if: (1) it is in the child's best interest to be placed outside the home; (2)
reasonable efforts have been taken to prevent or eliminate the need for the child's removal
from the home; and (3) while in the home, the child cannot receive the quality of care and
level of support and supervision needed to meet the conditions of probation. Tex. Fam.
Code Ann. § 54.04(i); K.J.N., 103 S.W.3d at 466.

 The first prong of the abuse of discretion test is uncontested, for there was ample
testimony for the trial court to exercise its discretion. K.D.B. argues, however, that the trial
court erred in applying its discretion by removing him from his home, or alternatively, not
placing him on probation under his uncle's supervisor. We must therefore determine
whether the trial court violated the second prong by acting arbitrarily, unreasonably, or
without reference to guiding rules or principles. J.M., 133 S.W.3d at 724. 

 By his sole point of error, K.D.B. argues that the trial court abused its discretion by
ordering appellant committed to the Texas Youth Commission. Specifically, appellant
argues that there is no evidence to support the trial court's finding that reasonable efforts
were made to prevent or eliminate the need for K.D.B.'s removal from the home. We
disagree.

 Appellant claims that there was no testimony at the disposition hearing to establish
that the placement of K.D.B. outside his home was in his best interest. K.D.B.'s own
testimony establishes that while he was in the care of his mother he used drugs daily and
became involved with peers who were allegedly involved in the aggravated robberies. The
trial judge heard K.D.B. and his mother testify. Based on this testimony, the judge could
have concluded that K.D.B. needed a more highly supervised and structured setting than
his mother could provide. See In re C.G., 162 S.W.3d 448, 452 (Tex. App.-Dallas 2005,
no pet.) (finding that the trial court did not abuse its discretion by placing a juvenile outside
the home when there was evidence that the juvenile participated in an armed robbery,
abused controlled substances, and had been involved in fights). 

 Appellant argues that even if the trial court determined that staying in his mother's
home was not in K.D.B.'s best interest, he should have been given a probationary
sentence and allowed to live with his uncle. K.D.B.'s uncle testified that he was willing to
closely supervise his nephew and help K.D.B. turn his life around. However, from the
testimony given by the uncle, the judge could have reasonably concluded that based on
the work schedules of the aunt and uncle, there may be times when K.D.B. would be left
unsupervised. While we have no basis to doubt the uncle's sincerity in helping K.D.B., the
trial court was in the best position to determine whether K.D.B. was likely to successfully
complete the terms of his probation if placed in his uncle's care. C.G., 162 S.W.3d at 453. 
The trial court could have reasonably concluded that the uncle, despite his good intentions,
underestimated K.D.B.'s problems. See id. at 452. 

 While K.D.B.'s testimony indicated that he was ashamed of what he had done; the
gravity of the crimes he committed was extreme. Moreover, K.D.B conceded in his
testimony that he was more than just a participant in the aggravated robberies, he was the
actor who brandished and pointed a gun. C.G., 162 S.W.3d at 452. Additionally, K.D.B.'s
attempt to flee from custody could have further indicated to the trial court that K.D.B.
required heightened supervision. As such, the trial court did not abuse its discretion in
denying K.D.B.'s request to be placed in the care of his uncle.

 We hold the trial court did not act arbitrarily, unreasonably, or without reference to
guiding principles, and therefore did not abuse its discretion. K.D.B.'s sole point of error
is overruled.

III. CONCLUSION

 We affirm the judgment of the trial court.


 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 19th day of July, 2007. 

 

1. Later testimony of K.D.B.'s mother defined "handlebars" as intoxicating pills.