

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00192-CV

_____

IN THE MATTER OF H.A.

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-109828-19

Before Gabriel, Kerr, and Womack, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In a single issue, appellant H.A. (Harold)[1] argues that the juvenile court abused its discretion by sentencing him to an eight-year term of commitment in the custody of the Texas Juvenile Justice Department (TJJD) after adjudicating him delinquent upon a finding that he had committed the felony offense of aggravated robbery. *See* Tex. Fam. Code Ann. § 54.04(d)(3); Tex. Penal Code Ann. § 29.03(a)(2), (b). We conclude the juvenile court did not abuse its discretion and therefore affirm.

## II. BACKGROUND

In January 2019, the State filed a petition alleging that Harold had engaged in delinquent conduct by committing the offense of aggravated robbery, a first-degree felony. *See* Tex. Penal Code Ann. § 29.03(a)(2), (b). A grand jury subsequently approved the petition, and after holding an adjudication hearing, the juvenile court found beyond a reasonable doubt that Harold had committed the offense alleged and that he had thus engaged in delinquent conduct. *See* Tex. Fam. Code Ann. §§ 53.045, 54.03. The case then proceeded to a disposition hearing. *See id.* § 54.04. Following that hearing, the juvenile court found that Harold was in need of rehabilitation and

---

[1]Because this appeal arises out of Title 3 of the Family Code and H.A. is a minor, we refer to H.A. by an alias throughout this opinion. *See* Tex. R. App. P. 9.8(c)(2).

that the protection of the public and of Harold required that a disposition be made. *See id.* § 54.04(c).

In addition, the juvenile court found that (1) it was in Harold's best interest to be placed outside of his home, (2) reasonable efforts had been made to prevent or eliminate the need for Harold's removal from his home and to make it possible for him to return to his home, and (3) Harold could not be provided the quality of care and the level of support and supervision in his home that he needed to meet the conditions of probation. *See id.* § 54.04(i)(1). The juvenile court accordingly sentenced Harold to an eight-year term of commitment in the TJJD, with a possible transfer to the Texas Department of Criminal Justice. *See id.* § 54.04(d)(3). Harold then brought this appeal. *See id.* § 56.01(c)(1)(C).

### III. DISCUSSION

In his sole issue, Harold attacks the juvenile court's disposition decision, arguing that the juvenile court abused its discretion by sentencing him to a term of commitment in the TJJD.

### A. Applicable Law

Where, as here, (1) a juvenile court finds that a child engaged in delinquent conduct that included committing aggravated robbery, (2) the court further finds that the child is in need of rehabilitation or that the protection of the public or the child requires that disposition be made, and (3) a grand jury approved the underlying petition for adjudication, the court may sentence the child to a term of commitment

3

in the TJJD. *See id.* §§ 53.045(a)(7), 54.04(c), (d)(3); Tex. Penal Code Ann. § 29.03. When sentencing a child to a term of commitment in the TJJD, the juvenile court "shall include in its order" its determination that:

(A) it is in the child's best interests to be placed outside the child's home;

(B) reasonable efforts were made to prevent or eliminate the need for the child's removal from the home and to make it possible for the child to return to the child's home; and

(C) the child, in the child's home, cannot be provided the quality of care and level of support and supervision that the child needs to meet the conditions of probation.

Tex. Fam. Code Ann. § 54.04(i)(1).

Harold concedes that the juvenile court included these three findings in its disposition order. In his sole issue, he challenges only the second finding, arguing that the juvenile court abused its discretion because its finding under Section 54.04(i)(1)(B) (the reasonable-efforts finding) is not supported by legally or factually sufficient evidence.

## B.    Standard of Review

A juvenile court has broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct. *In re C.C.B.*, No. 02-08-00379-CV, 2009 WL 2972912, at *3 (Tex. App.—Fort Worth Sept. 17, 2009, no pet.) (mem. op.). Thus, we will not disturb a juvenile court's disposition findings absent an abuse of discretion. *See In re K.L.*, No. 02-17-00226-CV, 2018 WL 1755225, at *5 (Tex. App.—Fort Worth Apr. 12, 2018, no pet.) (mem. op.). An abuse

4

of discretion occurs when the juvenile court acts unreasonably or arbitrarily without reference to any guiding rules or principles, but a juvenile court does not abuse its discretion simply by basing its decision on conflicting evidence. *See C.C.B.*, 2009 WL 2972912, at *3; *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.). And we will not find an abuse of discretion as long as some evidence of substantive and probative character exists to support the juvenile court's decision. *C.J.H.*, 79 S.W.3d at 702. In conducting our review, we engage in a two-pronged analysis: (1) was there sufficient information upon which to exercise discretion, and (2) did the juvenile court err in its application of discretion? *C.C.B.*, 2009 WL 2972912, at *3; *see also In re C.C.*, No. 02-17-00216-CV, 2018 WL 1865804, at *3 (Tex. App.—Fort Worth Apr. 19, 2018, no pet.) (mem. op.).

Under an abuse-of-discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but they are relevant in evaluating whether the juvenile court abused its discretion. *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.); *In re J.J.N.*, No. 2-02-204-CV, 2003 WL 253660, at *2 (Tex. App.—Fort Worth Feb. 6, 2003, no pet.) (mem. op.). In this context, we apply the civil standards of review to complaints about the sufficiency of the evidence. *See In re D.M.*, No. 02-17-00059-CV, 2018 WL 1630704, at *5 (Tex. App.—Fort Worth Apr. 5, 2018, no pet.) (mem. op.). When determining whether there is legally sufficient evidence to support the finding under review, we consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence

contrary to the finding unless a reasonable factfinder could not. *In re M.E.*, No. 02-14-00051-CV, 2014 WL 7334990, at *2 (Tex. App.—Fort Worth Dec. 23, 2014, no pet.) (mem. op.). Anything more than a scintilla of evidence supporting a finding renders the evidence legally sufficient. *D.M.*, 2018 WL 1630704, at *5.

When reviewing an argument that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Id.* at *6.

## C. Evidence

The evidence at the disposition hearing consisted of two documentary exhibits—a social history and a victim court statement—introduced by the State and the testimony of three witnesses—Harold's parents and his probation officer—called by Harold. That evidence revealed the following.

Harold's parents divorced in 2011, and from that time until the time of the disposition hearing, he had primarily lived with his father. But Harold did spend some time living with his mother during that period. The evidence reflects that Harold's first involvement with the juvenile department came in March 2017, while he was living with his mother. From March 6, 2017, to June 20, 2017, the juvenile department placed Harold on conditional pre-disposition supervision for possession

6

of marijuana. During that period of supervision, Harold received another referral to the juvenile department, this time for an April 1, 2017 evading-arrest-or-detention offense.[2]

While still living with his mother and still on his conditional pre-disposition supervision, Harold was referred to the juvenile department for committing on April 7, 2017, the third-degree-felony offense of possessing a gun in a prohibited place. From the middle of April 2017 through the beginning of May 2017, Harold was placed on electronic monitoring, which he successfully completed.

With regard to the gun-possession offense, Harold's father testified that he had read the offense report, which reflected that Harold had stolen a gun from a vehicle and had taken it onto school grounds. In contrast to that explanation, however, Harold's mother testified that Harold had told her that he had found the gun in a dumpster and had taken it to the school after hours in order to sell it to another student. In any event, the gun-possession referral resulted in an adjudication, and consequently, Harold was placed on court-ordered probation for a year, starting on June 20, 2017.

After he was referred for the gun-possession offense, Harold started living with his father again. He was subsequently referred to the juvenile department for two

_____

[2]The State ultimately waived Harold's marijuana-possession and evading-arrest offenses.

theft offenses allegedly committed on August 17, 2017, a date that was just shy of two months into his probation.[3]

Harold admitted to his probation officer that he had used marijuana and that he had been to the Tarrant Youth Recovery Campus (TYRC) for drug rehabilitation on three occasions. The social history reflects two such visits from June 2017 through October 2017 and indicates that Harold had failed to comply on one of those occasions. In October 2017, Harold was referred to the juvenile department for violating a court order, which resulted in the juvenile court's extending his probation by a month. From May 2018 through July 2018, Harold received counseling through the Families in Transition program provided by Santa Fe Youth Services. He completed his probation for the gun-possession offense in July 2018.

But two months later, Harold was referred to the juvenile department for two counts of criminal mischief. Those offenses involved Harold and others stealing a BB gun from a Wal-Mart and then using the BB gun to shoot out windows in homes, vehicles, and a school. According to the social history, thirty-seven victims of those offenses had been identified, and more than $13,000 in total property damage had been claimed. As of the date of the hearing on May 8, 2019, the criminal-mischief cases had not been filed, but they had been returned to intake with probable cause,

---

[3]Both theft offenses were ultimately found not true.

8

and they were pending at the time Harold committed the aggravated robbery underlying this appeal.

On January 12, 2019—less than six months after he completed his gun-possession probation and less than four months after his criminal-mischief referrals—Harold committed the aggravated robbery at issue here. As for the underlying facts of that offense, the evidence reflects that a carful of young individuals followed the complainant as she was driving home and that when she parked her car, two of the suspects—one of whom was Harold—approached the vehicle brandishing handguns, putting one gun to the complainant's head and the other to her side. One of the suspects ordered the complainant to put her head down, and then Harold went around the vehicle, entered the front passenger compartment, and took the complainant's purse and cell phone. The suspects then fled the scene in their vehicle. When officers located the suspects, they were inside the getaway vehicle, and when the officers looked inside that vehicle, they saw in plain view a shotgun and three handguns, one of which had been stolen.

## D. Analysis

Harold contends that before a juvenile court commits a juvenile to the TJJD, the State should have to introduce evidence at the disposition hearing showing what specific services or placement options the juvenile department can offer to the delinquent juvenile. Harold suggests that "at a minimum," he should have had the opportunity for the probation department to conduct a placement search for an

9

outside-the-home facility prior to being committed to the TJJD. Harold argues that insufficient evidence supports the juvenile court's reasonable-efforts finding because no evidence was introduced at the disposition hearing showing that "other placement options short of TJJD were explored or sought."

Harold has not cited any authority for his assertion that a juvenile court always lacks legally or factually sufficient evidence to make a reasonable-efforts finding if the State does not present evidence at the disposition hearing showing what specific services or outside-the-home placement options the juvenile department could offer to the delinquent juvenile. And contrary to that assertion, we have previously concluded that the circumstances surrounding a delinquent juvenile's history of contact with the juvenile department can, by itself, supply a sufficient basis for a juvenile court to make a reasonable-efforts finding. *See In re R.W.R.*, No. 2-04-331-CV, 2005 WL 1838981, at *3 (Tex. App.—Fort Worth Aug. 4, 2005, no pet.) (mem. op.) (holding evidence showing that juvenile committed second-degree felony despite having been previously placed on probation for prior offenses and having previously participated in services provided by the juvenile department was legally and factually sufficient to support juvenile court's reasonable-efforts finding).

From the evidence presented at the hearing, the juvenile court could have considered the evidence relating to Harold's history of contact with the juvenile department and reasonably found from it that over a nearly two-year period, Harold had engaged in a continuing pattern of delinquent conduct that included possessing a

10

controlled substance, evading arrest, possessing a gun on school grounds, and criminal mischief. The juvenile court could have further found that this pattern of conduct had resulted in Harold receiving conditional pre-disposition supervision and probation, as well as numerous services from the juvenile department, including multiple stints of drug rehabilitation at TYRC, electronic monitoring, and counseling through a Families in Transition program. The juvenile court could have found that notwithstanding the juvenile department's prior interventions, Harold's behavior not only continued but also escalated to an aggravated robbery in which he put a firearm to either the victim's head or side. And from those findings, the juvenile court could have reasonably concluded that reasonable efforts had been made to prevent or eliminate the need for Harold's removal from his home and to make it possible for him to return to his home. *See* Tex. Fam. Code Ann. § 54.04(i)(1)(B).

We conclude that the juvenile court's reasonable-efforts finding is supported by legally and factually sufficient evidence. *See R.W.R.*, 2005 WL 1838981, at *3. Accordingly, Harold has failed to establish the juvenile court abused its discretion by sentencing him to a term of commitment in the TJJD. We therefore overrule his sole issue.

## IV. CONCLUSION

Having overruled Harold's sole issue, we affirm the juvenile court's judgment.

11

/s/ Dana Womack

Dana Womack
Justice

Delivered:  December 19, 2019