**Opinion issued June 15, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00384-CV

———————————

## IN THE MATTER OF J.F., A JUVENILE

---

**On Appeal from the 314th Judicial District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-01501J**

---

## MEMORANDUM OPINION

J.F., a juvenile, pleaded true to three charges of aggravated robbery by threat with a deadly weapon. *See* TEX. PENAL CODE § 29.03(a)(2). The trial court found that J.F. is a juvenile who engaged in delinquent conduct and, after a disposition hearing, sentenced him to eight years' confinement. J.F. appeals, complaining that (1) there is insufficient evidence to support the trial court's order of confinement and (2) his sentence is grossly disproportionate to the crime. Because the trial court's

order is supported by the evidence and J.F.'s second challenge was not preserved for review, we affirm.

## Background

In August 2021, J.F. and two unidentified black men accompanied J.F.'s girlfriend, Melissa, to the apartment of Sam, John, and Arnold.[1] Melissa knocked on the door while J.F. and the two men waited out of sight. Sam answered the door and let Melissa come inside. Sam locked the door behind them, but Melissa unlocked it. A few minutes later, J.F. and the two black men entered the apartment wearing masks and with guns drawn. J.F. hit John in the head with a handgun, causing a bloody laceration. John struggled with J.F. for control of the gun until one of the black men hit John in the head again.

J.F. made Sam lay on the floor and held him and John at gunpoint while one of the black men went to Arnold's bedroom. The black men then stole Sam's wallet, $2,000 in cash, a PlayStation 5, Arnold's 9mm Canik handgun, and the keys to John's 2018 Toyota Corolla. Melissa also stole John's pet kitten. The robbers then fled. J.F. drove himself and Melissa in her vehicle, and the two black men drove John's stolen vehicle.

---

[1] We use pseudonyms for these four people to protect J.F.'s identity. *See* TEX. R. APP. P. 9.8(c).

The complainants—Sam, John, and Arnold—contacted the police. The police located Melissa at her home, and she gave them J.F.'s name. The police then contacted J.F.'s mother, and she brought J.F. to the police station for questioning. J.F. refused to provide a statement but did allow police to take his photo. John and Arnold were able to positively identify J.F. as one person who robbed them.

The following month, investigators with the Harris County Sheriff's Office tried to apprehend J.F., but he fled. During the chase, a loaded handgun fell from J.F.'s pants onto the ground. Law enforcement caught and arrested J.F. soon after, charging him with unlawfully carrying a weapon and aggravated robbery with a deadly weapon. *See* TEX. PENAL CODE §§ 29.03(a)(2), 46.02(a-4).

While J.F. was held at the Harris County Juvenile Detention Center, he sent several letters to Melissa threatening her and her unborn child. Melissa requested to be removed from J.F.'s contact list, but J.F. continued sending her letters under a different name to avoid the no-contact restriction. Melissa contacted the police, and J.F. was charged with terroristic threat.

The trial court held a hearing where J.F. pleaded true to aggravated robbery in three separate cases. Based on his plea, the trial court found that he engaged in delinquent conduct and needed rehabilitation. The trial court then had a disposition hearing.

Deputy Investigator C. Wilkerson testified about the terroristic threat charge based on the letters J.F. sent while in custody. The State also introduced three exhibits: J.F.'s plea paperwork, a collection of reports, and photographs of the letters J.F. sent Melissa. J.F. testified and called his mother as a witness. Mother testified about the support system she had in place to help J.F. if he was placed on probation. J.F. testified about the remorse for his actions, his future, and his ability to follow the trial court's orders if placed on probation.

After closing arguments, the trial court sentenced J.F. to eight years' confinement at the Texas Juvenile Justice Department ("TJJD").

**Sufficiency of the Evidence**

First, J.F. contends the evidence before the trial court does not support a sentence of confinement. The State argues that the trial court was within its discretion to sentence J.F. to confinement based on the evidence.

**A.     Standard of Review**

A trial court has broad discretion to determine a suitable disposition for a juvenile found to have engaged in delinquent behavior. *In re W.J.P.*, No. 01-19-00988-CV, 2021 WL 2931437, at *2 (Tex. App.—Houston [1st Dist.] Jul. 13, 2021, no pet.) (mem. op.); *see also In re C.J.*, No. 01-08-00771-CV, 2009 WL 1886614, at *2 (Tex. App.—Houston [1st Dist.] July 2, 2009, no pet.) (mem. op.) (applying abuse-of-discretion standard in reviewing disposition order). A trial

court abuses its discretion when it acts unreasonably, arbitrarily, or without reference to any guiding rules or principles. *In re W.J.P.*, 2021 WL 2931437, at *2.

## B.    Analysis

J.F. argues that the trial court received a recommendation that he be placed on probation and that Mother testified that she had a support structure available to ensure that J.F. would succeed on probation. He also contends that no evidence was submitted that supported confinement.

A trial court need not exhaust all possible alternatives before sending a juvenile to TJJD. *In re W.J.P.*, 2021 WL 2931437, at *3. But it may commit a juvenile to TJJD only if it finds, among other things, that: (1) it is in the child's best interests to be placed outside of his home; (2) reasonable efforts were made to prevent or eliminate the need for removal and return of the child to his home; and (3) the child, in his home, cannot be provided the quality of care, and level of support and supervision that he needs to meet the conditions of probation. TEX. FAM. CODE § 54.04(i)(1).

The trial court stated that J.F. "needs a highly structured environment with a level of supervision and control that cannot be met by the resources available in the community." It also entered findings that: J.F. engaged in delinquent conduct; J.F. needs rehabilitation; the State presented its petition to the grand jury of Harris County, Texas; the petition alleged that J.F. engaged in delinquent conduct including

5

violating Section 53.045 of the Texas Family Code; the grand jury approved the State's petition; the allegation are supported by the evidence beyond a reasonable doubt; a deadly weapon, a firearm, was used in the commission of the offense; J.F. was 17 years old at the time of the hearing; J.F. is a child under the meaning of Title III of the Texas Family Code; the disposition is in the best interest of J.F.'s health, safety, morals, and education; reasonable efforts were made to prevent the need for J.F.'s removal from his home; at home, J.F. cannot be provided the quality or care and level of support and supervision that he needs to meet the conditions of probation; and the best interest of J.F. and the community will be served by committing J.F. to TJJD.

Under an abuse-of-discretion standard, the legal and factual sufficiency of the evidence are relevant in evaluating whether the juvenile court abused its discretion. *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.). In support of the first and third factors of Section 54.04(i)(1), the State presented a court report, a pre-court staffing report, a psychological screening report, a probation report, and a gang assessment report. TEX. FAM. CODE § 54.04(i)(1). It also presented photos of the letters J.F. sent to Melissa along with the testimony of Deputy Investigator Wilkerson.

When considering the legal sufficiency of the evidence, an appellate court considers the evidence and inferences tending to support the trial court's findings

and sets aside the judgment only if there is no evidence of probative force to support the findings. *In re C.G.*, 162 S.W.3d at 452. We consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *In re A.T.M.*, 281 S.W.3d 67, 71 (Tex. App.—El Paso 2008, no pet.). Anything more than a scintilla of evidence is legally sufficient to support the finding. *In re C.J.H.*, 79 S.W.3d 698, 703 (Tex. App.—Fort Worth 2002, no pet.). When considering factual sufficiency, we consider and weigh all the evidence and set aside the judgment only if the finding is so against the great weight and preponderance of the evidence to be clearly unjust. *In re A.T.M.*, 281 S.W.3d at 71; *In re C.G.*, 162 S.W.3d at 452.

While Mother stated that she would change her schedule to allow her to supervise J.F., enroll J.F. in counseling, and get other family members to help supervise J.F., this does not mean the trial court's sentence was not supported by the evidence. Generally, a trial court does not abuse its discretion in rendering a commitment order when a juvenile has engaged in a violent activity that makes the juvenile potentially dangerous to the public. *In re W.J.P.*, 2021 WL 2931437, at *3.

The record shows that J.F. has anger issues, uses marijuana, has run away from home, associates with negative peers, and is a member of a local gang. While J.F. reported having good grades, conduct, and attendance, his records show that he is repeating 9th grade. While in custody, J.F. received 16 rule violations for: not

7

following instructions, disclosure, possession of gang-related material, trading/stealing/gambling, disruptive behavior, refusing to attend school, and possession of contraband. J.F. also reported being a member of a gang that he was first exposed to by a former girlfriend. Mother also reported that J.F. would leave home without permission, had previously run away, and did not follow curfew. Additionally, the letters J.F. sent to Melissa while he was in custody state, "that dead ass baby you about to have and yo dead ass lil bf gone end up high as fuck" and "me and my TOP members gone handle yall and it's not a threat it's a promise lil blood."

The trial court could have reasonably concluded that J.F.'s environment cannot provide the level of care and supervision that he needs to address the issues he is facing and that it is in his best interest to be confined to TJJD to obtain resources and services that he needs. *See In re J.P.*, No. 01-20-00072-CV, 2021 WL 2231259, at *5–7 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.) (affirming trial court's TJJD commitment order when record showed that TJJD would offer structured environment that juvenile needed, along with improving his chances of academic success); *see also In re M.A.F.*, No. 14-03-00698-CV, 2004 WL 1661009, at *2 (Tex. App.—Houston [14th Dist.] July 27, 2004, no pet.) (mem. op.) (evidence of delinquent conduct, aggressive behavior, poor performance at school, drug use, and need for structured environment were legally and factually sufficient to support best-interest finding).

Considering the first 54.04(i)(1) factor, the best interests of the child, based on J.F.'s history of disregarding rules, his criminal conduct, habitual drug use, threats toward others, and gang affiliation, we conclude that more than a scintilla of evidence supports the trial court's finding that it is in J.F.'s best interests to be placed outside of his home. *See* TEX. FAM. CODE § 54.04(i)(1)(A); *In re A.T.M.*, 281 S.W.3d at 71. Based on our review of the record, we cannot conclude that the credible evidence supporting the trial court's finding is so weak or so contrary to the weight of all the evidence as to be manifestly wrong. *See* TEX. FAM. CODE § 54.04(i)(1)(A); *In re A.T.M.*, 281 S.W.3d at 71.

In support of the second factor in Section 54.04(i)(1), that reasonable efforts were made to prevent the need for removal and to make it possible for the child to return home, the record reflects that J.F. had previously been referred to multiple rehabilitation programs, including referrals for counseling and psychological services. But the trial court still found that removal was necessary "due to the nature of the offense." Making "reasonable efforts" under Section 54.04(i)(1) does not require that services must be explored, but they were available. *See In re B.R.*, No. 02-19-00328-CV, 2020 WL 3969556, at *6 (Tex. App.—Fort Worth June 18, 2020, no pet.) (mem. op.). As stated above, a trial court need not exhaust all possible alternatives before sending a juvenile to TJJD. *In re W.J.P.*, 2021 WL 2931437, at *3. Based on the seriousness of J.F.'s crime, his behavior while in custody, his gang

affiliation, and drug use, we conclude that more than a scintilla of evidence supports the trial court's finding that reasonable efforts were made to prevent or eliminate the need for J.F.'s removal from the home and to make it possible for J.F. to return to his home. *See* TEX. FAM. CODE § 54.04(i)(1)(B); *In re A.T.M.*, 281 S.W.3d at 71. Further, we cannot conclude that the credible evidence supporting the trial court's finding is so weak or contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *See* TEX. FAM. CODE § 54.04(i)(1)(B); *In re A.T.M.*, 281 S.W.3d at 71.

Lastly, considering the third 54.04(i)(1) factor, the quality of care and level of support and supervision needed to meet the conditions of probation, based on J.F.'s history of disregarding Mother's rules, including running away, we conclude that more than a scintilla of evidence supports the trial court's finding. *See* TEX. FAM. CODE § 54.04(i)(1)(C); *In re A.T.M.*, 281 S.W.3d at 71. Again, we cannot conclude that the credible evidence supporting the trial court's finding is so weak or so contrary to the weight of all the evidence as to be manifestly wrong. *See* TEX. FAM. CODE § 54.04(i)(1)(C); *In re A.T.M.*, 281 S.W.3d at 71.

We overrule J.F.'s first issue.

## Disproportionate Sentence

In J.F.'s second issue, he contends that his sentence is "grossly disproportionate" to the delinquency offense. The State argues that the issue was not preserved for our review. We agree.

The Eighth Amendment of the United States Constitution requires that a defendant's criminal sentence be proportionate to the crime the defendant has been convicted of. *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see* U.S. CONST. amend. VIII. But to raise this issue on appeal, a defendant must preserve error through a timely request, objection, or motion stating the basis for the ruling that the party seeks. *See* TEX. R. APP. P. 33.1(a)(1)(A).

Here, after the trial court announced its sentence at the disposition hearing, J.F. made no objection to the sentence, nor did he assert this complaint in his motion for new trial. *See Solis v. State*, 945 S.W.2d 300, 301 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (defendant could not assert Eighth Amendment claim for first time on appeal). Thus J.F. has failed to preserve his Eighth Amendment complaint for review.

We overrule J.F.'s second issue.

## Conclusion

Accordingly, we affirm the trial court's judgment.

Sarah Beth Landau
Justice

Panel consists of Justices Landau, Countiss, and Guerra.