

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00144-CV
_____

IN THE MATTER OF A.K.

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-122274-23

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

**MEMORANDUM OPINION**

## I. INTRODUCTION

Appellant, A.K., a juvenile, appeals the juvenile court's April 24, 2024 judgment modifying his disposition and committing him to the Texas Juvenile Justice Department (TJJD) to serve an indeterminate sentence. Because the judgment is not supported by sufficient evidence, we hold that the juvenile court abused its discretion, reverse its April 24, 2024 judgment and order of commitment, and remand the cause for proceedings consistent with this opinion.

## II. BACKGROUND

### A. Original Adjudication and Disposition and the State's Motion to Modify

On November 17, 2023, an associate judge in the juvenile court signed a judgment in which it found that A.K. had engaged in delinquent conduct by committing the felony offense of burglary of a habitation and placed A.K. on probation until November 16, 2024. The presiding judge in the juvenile court approved this judgment.

A month later, on December 18, 2023, the State filed a motion to modify disposition. The State alleged four probation violations: that A.K. had committed two criminal trespasses, tested positive for a controlled substance in violation of a court order, and run away from home.

**B. The March 6, 2024 Hearing**

On March 6, 2024, the associate judge conducted a hearing on the State's motion to modify. We do not have a reporter's record of this hearing, but a February 28, 2024 social history is included in the sealed clerk's record.

The clerk's record contains a document entitled "Stipulation of Evidence, Judicial Confession, and Disposition Agreement" and signed by A.K., A.K.'s mother, A.K.'s attorney, the State's attorney, and the associate judge. In that document, A.K. agreed to stipulate that he violated the first three allegations in the State's motion to modify—but not the allegation that he ran away from home—and in which he agreed "to MODIFY [his] probation to include PLACEMENT in a facility designated by the Juvenile Justice Department and approved by the Court." In conjunction with this stipulation, A.K. signed a waiver of his right to have the case heard by the presiding judge.

Two orders resulted from the March 6 hearing:

- an order dated the same day and signed by the associate judge that changed the custody, care, and control of A.K. from his mother's home to the post-adjudication facility of Grayson County and that ordered A.K. to participate in and successfully complete the facility's residential placement program; and

- a March 11, 2024 judgment, also signed by the associate judge, disposing of the State's motion to modify. Consistent with the plea bargain,[1] the associate judge found the first three allegations in the State's motion to modify true, continued A.K.'s probation without extending it, and ordered that A.K. be placed outside his home. The presiding judge approved this judgment on the same date.

---

[1]By statute, this order is not appealable. *See* Tex. Fam. Code Ann. § 56.01(n).

3

## C. Subsequent Proceedings

On March 21, 2024, the presiding judge signed an order of detention finding probable cause that A.K. had engaged in delinquent conduct or conduct indicating a need for supervision and continuing A.K.'s detention pending his placement in the post-adjudication facility.[2] The box showing that a juvenile has a history of being aggressive towards others was not checked. We have no reporter's record of that hearing. *See* Tex. Fam. Code Ann. § 54.09 (providing that all juvenile court proceedings except detention hearings must be recorded).

On March 28, 2024, the presiding judge convened "a hearing under 54.05 of the Texas Family Code on a motion to modify disposition" at which A.K. and defense counsel appeared.[3] No new motion to modify appears in the record. Nothing in the

---

[2]A juvenile may be detained after a disposition pending the child's transportation to an ordered placement. *See id.* § 54.04(x). While the juvenile is in detention, unless waived by the juvenile, a detention hearing is supposed to occur every ten days. *See id.* § 54.01(h). The previous detention order is dated March 6, 2024, and it has the same findings as the March 21, 2024 detention order.

[3]Whether A.K.'s mother appeared is not clear. *See id.* § 51.11(a-1) ("If a child appears before the juvenile court without a parent or guardian, the court shall appoint a guardian ad litem to protect the interests of the child."). The reporter's record of the hearing does not identify A.K.'s mother as being present. On the other hand, during the hearing, the supervisor for the probation department testified that he had spoken to A.K.'s mother earlier that morning but did not specify whether he had done so in person or by phone. The juvenile court's subsequent written judgment identifies A.K.'s mother as having appeared. *See, e.g., In re A.E.B.*, No. 01-19-00517-CV, 2021 WL 2931438, at *11 (Tex. App.—Houston [1st Dist.] July 13, 2021, pet. denied) (mem. op.) (relying on cases holding that we presume recitals in judgment are true absent controverting evidence). A.K.'s mother did not appear for the March 21,

4

clerk's record indicates when or how notice of this hearing was given, but A.K. did not object to the proceedings or a lack of notice thereof. As discussed below, we conclude that the presiding judge was proceeding on his own motion to modify. *See id.* § 54.05(d).

During the hearing, the question of whether the March 11, 2024 judgment had been vacated arose during A.K.'s probation supervisor's testimony:

A. [A.K.] was approved by placement at Grayson County Post-Adjudication.

Q. . . . And Grayson County, that's . . . basically a juvenile facility run by Grayson County?

A. Yes, sir.

Q. . . . And is that a placement still available for [A.K.]?

A. Yes, sir.

Q. And could he go there as soon as it is opened up and made available to him?

A. Correct, sir.

Q. . . . And was this already approved?

A. Yes, sir. It was approved by Judge Shaw.

Q. Okay. And at that placement at Grayson --

---

2024 detention hearing, but the detention order shows that in her absence, the presiding judge appointed A.K.'s attorney as his guardian ad litem.

THE COURT: That's actually not true because that was vacated,[4] correct?

[Defense counsel]: I could reask that a different way.

Q. (By defense counsel) Did Judge Shaw prior make approval [sic] of that place?

A. Yes, sir.

Q. . . . And since then --

THE COURT: Again, for the record, are you asking your witness to say that a judge approved -- did something that was vacated?

[Defense counsel]: Yes.

THE COURT: Vacated means it never happened.

[Defense counsel]: Well, that -- the Judge had approved that and I was going to ask has it been vacated and we're back for a new hearing. I guess you could tell that by taking judicial notice of the record.

THE COURT: Okay. Please proceed.

Thereafter, the probation supervisor testified that A.K. had "recently" flooded his room and destroyed county property; he had also been in "fights," some of which

---

[4]The record contains no written, signed order vacating the March 11, 2024 judgment. *See Brye v. Janish*, No. 14-07-00660CV, 2007 WL 2990546, at \*1 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, orig. proceeding) (per curiam) (mem. op.) ("In order to be effective, any action during the thirty-day period after rendition must be by written order. . . . If no written order is signed within the required time, the judgment becomes final in thirty days and the trial judge loses jurisdiction over the case."); *Tex. Prop. & Cas. Ins. Guar. Ass'n v. De Los Santos*, 47 S.W.3d 584, 588 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (providing that oral pronouncement vacating a judgment and corresponding docket entry were insufficient to vacate the judgment).

were physical and some of which were verbal. When the presiding judge asked about the nature of the fights, the probation supervisor said that the "most recent" one was unprovoked and that A.K. had been the aggressor. But he also said that no injuries from that fight had been "documented" in A.K.'s file. What the probation supervisor meant by "the most recent" fight is not clear; he never testified about any specific date or dates.

The last social history in the sealed clerk's record, prepared on March 22, 2024, does not identify A.K. as the aggressor in any assault while in detention.[5] It also notes that A.K. had been scheduled to move to the Grayson County post-adjudication facility on March 27, 2024.

Regarding the modified disposition, A.K. argued in favor of placement in the Grayson County post-adjudication facility. The State asked that the presiding judge not place A.K. back in his home. The State did not ask that A.K. be committed to TJJD.

On the record, the presiding judge expressed his reservations about sending A.K. to the post-adjudication facility:

> [A.K.], your attorney worked really hard to get you to a placement and then even though [before] the deal was worked out, just within a couple of weeks you decide to, unprovoked, assault another resident back there. That is consistent with the other assaults you have had in our detention

_____

[5]The social history prepared for the March 6, 2024 hearing notes, "Youth has one physical alteration where he was secluded. The youth was assaulted on one occasion and was not the aggressor."

facility over time that you have been here being detained. I am not willing to place you in a placement facility where you are assaultive. . . . [W]hen you start interfering with other people and are assaultive with other people, you are destructive to other people's property that is a point where I cannot place you back in the community or I will not place you in the community.

The presiding judge then orally assessed an indeterminate sentence and committed A.K. to TJJD.

Although the presiding judge noted on the record that A.K. had violated a reasonable and lawful condition of probation, he never specified which condition or conditions A.K. had violated. The presiding judge also did not sign a judgment or commitment order on March 28, 2024.

## D.  The April 24, 2024 Judgment

On April 24, 2024, the presiding judge signed a written judgment reflecting his March 28, 2024 oral ruling[6] and an order of commitment. The April 24, 2024 judgment lists the bases for revoking A.K.'s probation as the four grounds originally alleged in the State's December 18, 2023 motion to modify, including the ground that the State had agreed to waive in the March 6 plea bargain—that A.K. had run away from home. No new violations were listed.

On appeal, A.K. challenges the validity of the April 24, 2024 judgment.

---

[6]A.K. filed a premature notice of appeal on April 3, 2024. *See* Tex. R. App. P. 27.1(a).

8

## III. DISCUSSION

A.K. articulates three issues on appeal: (1) the juvenile court abused its discretion by "vacating" the March 11, 2024 final judgment, holding a new probation revocation hearing, and sentencing A.K. to TJJD; (2) the juvenile court's actions resulted in A.K.'s "being tried twice for the same probation violation"; and (3) the evidence at the March 28, 2024 hearing was insufficient to support A.K.'s placement at TJJD. Fairly included in A.K.'s first and second issues is the argument that no evidence supports a subsequent modification of the March 11, 2024 judgment continuing his probation and placing him in the Grayson County post-adjudication facility;[7] therefore, we address that complaint first.

### A. Applicable Law and Standard of Review

A juvenile court may modify a prior disposition order, other than one committing a juvenile to TJJD, "on the petition of the child and his parent, . . . the state, a probation officer, or the court itself," provided that the juvenile is given reasonable notice of the modification hearing. Tex. Fam. Code Ann. § 54.05(a), (d). To modify the disposition order here, the court had to find by a preponderance of the evidence that A.K. "violated a reasonable and lawful order of the court." *Id.* § 54.05(f); *In re J.K.A.*, 855 S.W.2d 58, 62 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

---

[7]We construe A.K.'s brief liberally. *See* Tex. R. App. P. 38.1(f), 38.9.

We use an abuse-of-discretion standard when reviewing a juvenile court's disposition determination under Section 54.05. *In re B.E.E.*, 658 S.W.3d 908, 914 (Tex. App.—El Paso 2022, no pet.); *In re A.S.*, No. 05-13-01022-CV, 2013 WL 6405489, at *3 (Tex. App.—Dallas Dec. 5, 2013, no pet.) (mem. op.). A juvenile court abuses its discretion when it acts without reference to guiding rules or principles or when it acts arbitrarily or unreasonably. *B.E.E.*, 658 S.W.3d at 914.

In a disposition modification proceeding, the burden of proof is by a preponderance of the evidence. Tex. Fam. Code Ann. § 54.05(f). Legal and factual insufficiency are relevant factors in determining whether the juvenile court abused its discretion. *B.E.E.*, 658 S.W.3d at 914; *In re C.G.*, 162 S.W.3d 448, 452 (Tex. App.—Dallas 2005, no pet.). When reviewing legal sufficiency, we consider the evidence tending to support the findings and will reverse the judgment only if no evidence of probative force supports the relevant finding. *B.E.E.*, 658 S.W.3d at 914. And when reviewing factual sufficiency, we consider and weigh all the evidence and reverse the judgment only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

## B. Merits

Because the record does not show that the presiding judge signed an order vacating the March 11, 2024 judgment[8] and because neither A.K. nor the State

---

[8]For this reason, we asked the parties to brief whether the juvenile court's plenary jurisdiction had expired thirty days after March 11, 2024, that is, on April 10,

10

objected to appearing at the March 28, 2024 hearing on a Section 54.05 "motion to modify disposition," it appears that the presiding judge proceeded on his own petition. *See* Tex. Fam. Code Ann. § 54.05(d); *see also In re J.I.A.*, No. 01-12-00791-CV, 2013 WL 6670849, at *5 (Tex. App.—Houston [1st Dist.] Dec. 17, 2013, no pet.) (mem. op.) ("[R]easonable notice is presumed when, as here, a juvenile's attorney appears, does not file a motion for continuance, and the juvenile and parent are present and fully advised by the juvenile court as to the issues before it."); *see also In re L.A.G.R.*, No. 07-14-00072-CV, 2014 WL 5462540, at *2 (Tex. App.—Amarillo Oct. 28, 2014, pet. denied) (mem. op.) ("[T]he Family Code does not mandate specific pleading requirements at the disposition modification stage of a juvenile proceeding."); *In re J.A.S. III*, No. 13-06-00280-CV, 2008 WL 5248967, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 18, 2008, no pet.) (mem. op.) ("In contrast to the pleading requirements at the adjudication stage, the Legislature has not imposed specific requirements on a petition at the disposition modification stage of a juvenile proceeding.").

---

2024, and whether the juvenile court's April 24, 2024 judgment—having been signed after the expiration of its plenary jurisdiction—was void. *See* Tex. R. Civ. P. 329b(d). After reviewing the parties' jurisdictional briefs in light of Section 54.05 and the entire record, we conclude that the April 24, 2024 judgment resulted from a subsequent Section 54.05 proceeding and, thus, that we have jurisdiction over the appeal. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible.").

Although we presume that A.K. and his counsel received reasonable notice of the subsequent modification proceeding, we have nothing in the record by which to measure the sufficiency of the evidence supporting whatever new allegation or allegations prompted that new proceeding. Although the presiding judge's on-the-record comment during the March 28 hearing suggests that A.K. had committed a new probation violation by committing an unprovoked assault while in detention, the only evidence supporting such a conclusion is the probation supervisor's vague response to the presiding judge that "the most recent" fight was unprovoked and that A.K. was the aggressor. No evidence shows (1) when this fight occurred—before the March 11, 2024 judgment or afterward; (2) if A.K. violated his probation conditions by engaging in it; or (3) whether A.K.'s initiating the fight was the same allegation that prompted the March 28, 2024 modification proceeding.

Because the evidence does not show that A.K. "violated a reasonable and lawful order of the court" between March 11, 2024, and March 28, 2024, we sustain his complaint and hold that the presiding judge abused his discretion by revoking A.K.'s probation, assessing an indeterminate sentence, and committing him to TJJD. *See In re C.B.J.*, No. 10-03-00008-CV, 2004 WL 1588274, at *2 (Tex. App.—Waco July 14, 2004, no pet.) (mem. op.) (reversing and remanding modification of disposition when probation-violation finding was not supported by sufficient evidence); *see also A.S.*, 2013 WL 6405489, at *3 (setting forth standard of review); *C.G.*, 162 S.W.3d at 452 (same).

## IV. CONCLUSION

We reverse the juvenile court's April 24, 2024 judgment and order of commitment and remand the cause to the juvenile court for proceedings consistent with this opinion.

/s/ Dana Womack

Dana Womack
Justice

Delivered: November 7, 2024